**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CLERK OF DISTRICT COURT
NORTHERN DIST. OF TX
FORT WORTH DIVISION
FILED

2019 APR 29  PM 3: 31

DEPUTY CLERK

| | |
|---|---|
| LISA BIRON, | |
|     Plaintiff, | |
| v. | Civil Action No. 4:19-CV-322-A |
| FEDERAL MEDICAL CENTER ("FMC") CARSWELL WARDEN JODY UPTON; FMC CARSWELL PSYCHOLOGIST LETICIA A. ARMSTRONG; FMC CARSWELL PSYCHOLOGIST E. DIXON, | |
|     Defendants. | |

## DEFENDANTS' MOTION TO DISMISS

ERIN NEALY COX
United States Attorney

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8626
Facsimile:  214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants



## Table of Contents

I.     Introduction ............................................................................. 1

II.    Background .............................................................................. 2

III.   Legal Standards ....................................................................... 4

       A.     Rule 12(b)(1). ................................................................. 4

       B.     Rule 12(b)(6). ................................................................. 4

       C.     Qualified immunity. ....................................................... 5

IV.    Argument and Authorities ...................................................... 6

       A.     Biron's claims for money damages (1) are not cognizable and, in any
              event, (2) fail to overcome the personal-capacity defendants'
              qualified immunity. .................................................... 6

              1.     No damages claim is available to Biron. ........................ 6

                     a.     No *Bivens* remedy should be implied because Biron's
                            claims arise in a new context and special factors
                            counsel against expanding *Bivens* here ................................. 6

                     b.     No claim for money damages is available under
                            RFRA. ................................................................. 13

                     c.     Biron's cursory references to Texas law fail to support
                            any claim for damages. ........................................ 16

              2.     Even if a damages remedy were theoretically available, the
                     personal-capacity defendants are entitled to qualified
                     immunity. ............................................................... 16

                     a.     No clearly established law supports Biron's claims. ............ 17

                     b.     Biron fails to allege any violation of a constitutional or
                            statutory right, and her claims for damages are also
                            barred by the Prison Litigation Reform Act. ........................ 19

B.      Biron cannot establish jurisdiction for her official-capacity claims
        for declaratory and injunctive relief............................................................ 21

V.      Conclusion............................................................................................................ 23

# Table of Authorities

## Cases

*Ajaj v. United States*,
   No. 15-CV-992, 2016 WL 6212518 (D. Colo. Oct. 25, 2016) ............................. 14

*Anderson v. Creighton*,
   483 U.S. 635 (1987) ..................................................................................... 5

*Andrews v. Miner*,
   301 F. Supp. 3d 1128 (N.D. Ala. 2017) ............................................... 9, 10

*Ashcroft v. al-Kidd*,
   563 U.S. 731 (2011) ................................................................................ 5, 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009). ............................................................................ 4–5, 5

*Bell v. Wolfish*,
   441 U.S. 520 (1979) ................................................................................... 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................. 4, 5

*Biron v. Upton*,
   737 F. App'x 713 (5th Cir. 2018) ............................................................... 2

*Biron v. United States*,
   No. 16-CV-108-PB, 2017 WL 4402394 (D.N.H. Oct. 2, 2017) ............................. 2

*Bistrian v. Levi*,
   912 F.3d 79 (3d Cir. 2018) ....................................................................... 12

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
   403 U.S. 388 (1971) ..................................................................................... 1

*Bloch v. Samuels*,
   No. H-04-4861, 2006 WL 2239016 (S.D. Tex. Aug. 3, 2006) ...................... 14, 21

*Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*,
   461 U.S. 273 (1983) ................................................................................... 21

*BMW of N. Amer. Inc. v. Gore*,
   517 U.S. 559 (1996) ................................................................................... 21

*Brosseau v. Haugen,*
    543 U.S. 194 (2004) ................................................................ 17

*Buenrostro v. Fajardo,*
    No. 1:14-CV-75, 2017 WL 6033469 (E.D. Cal. Dec. 5, 2017) ............ 10

*Bush v. Lucas,*
    462 U.S. 367 (1983) ................................................................. 9

*Bustillos v. El Paso Cnty. Hosp. Dist.,*
    891 F.3d 214 (5th Cir. 2018) .................................................... 18

*Butts v. Martin,*
    877 F.3d 571 (5th Cir. 2017)..................................................... 19

*Carlson v. Green,*
    446 U.S. 14 (1980) .............................................................. 8, 9

*City & Cnty. of San Francisco v. Sheehan,*
    135 S. Ct. 1765 (2015) ........................................................... 18

*City of Boerne v. Flores,*
    521 U.S. 507 (1997) ............................................................... 14

*Collier v. Montgomery,*
    569 F.3d 214 (5th Cir. 2009).................................................... 16

*Colonial Cnty. Mut. Ins. Co. v. United States,*
    No. SA-15-CV-917-XR, 2015 WL 7454698 (W.D. Tex. Nov. 23, 2015) ........... 22

*Connelly v. Comptroller of the Currency,*
    876 F.2d 1209 (5th Cir. 1989).................................................... 5

*Copeland v. Livingston,*
    464 F. App'x 326 (5th Cir. 2012) .............................................. 14

*Davis v. Passman,*
    442 U.S. 228 (1979) ................................................................ 7

*Employment Division v. Smith,*
    494 U.S. 872 (1990) ............................................................... 13

*Freeman v. United States,*
    556 F.3d 326 (5th Cir. 2009)..................................................... 21

*Garcia v. Kerry,*
     557 F. App'x 304 (5th Cir. 2014) .......................................................... 2

*Geiger v. Jowers,*
     404 F.3d 371 (5th Cir. 2005).................................................................. 20

*Gonzalez v. Hasty,*
     269 F. Supp. 3d 45 (E.D.N.Y. 2017) .......................................... 9–10, 12

*Harlow v. Fitzgerald,*
     457 U.S. 800 (1982) ............................................................................... 5

*Hernandez v. Mesa,*
     885 F.3d 811 (5th Cir. 2018) (en banc)................................................ 12

*Holt v. Hobbs,*
     135 S. Ct. 853 (2015) ..................................................................... 14, 20

*Home Builders Ass'n of Miss. v. City of Madison,*
     143 F.3d 1006 (5th Cir. 1998)................................................................ 4

*Howard v. Lackey,*
     No. 7:16-CV-129, 2018 WL 1157547 (E.D. Ky. Mar. 5, 2018)............................ 10

*Hunter v. Bryant,*
     502 U.S. 224 (1991) ............................................................................... 5

*Insight for Living Ministries v. Burwell,*
     No. 4:14-CV-675, 2014 WL 6706921 (E.D. Tex. Nov. 25, 2014) ................. 13–14

*Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund,*
     500 U.S. 72 (1991) ............................................................................... 22

*Kentucky v. Graham,*
     473 U.S. 159 (1985) ............................................................................. 21

*Kovacic v. Villarreal,*
     628 F.3d 209 (5th Cir. 2010)................................................................... 5

*Lane v. Pena,*
     518 U.S. 187 (1996) ....................................................................... 21, 23

*Lopez v. Sentrillon Corp.,*
     749 F.3d 347 (5th Cir. 2014)................................................................. 22

*Mack v. Warden Loretto FCI*,
    839 F.3d 286 (3d Cir. 2016)................................................................... 14

*Malley v. Briggs*,
    475 U.S. 335 (1986) ............................................................................ 6

*Mercer v. Matevousian*,
    No. 1:18-CV-265, 2018 WL 3917969 (E.D. Cal. Aug. 14, 2018)......................... 12

*Morgan v. FBI*,
    No. A-16-CV-1290-LY, 2017 WL 1322251 (W.D. Tex. Apr. 10, 2017).............. 23

*Morgan v. Swanson*,
    659 F.3d 359 (5th Cir. 2011) (en banc)................................................. 16

*Morrow v. Meachum*,
    917 F.3d 870 (5th Cir. 2019)........................................................... 17, 18

*Muhammad v. Gehrke*,
    No. 2:15-CV-334, 2018 WL 1334936 (S.D. Ind. Mar. 15, 2018) ...................... 10

*Mullenix v. Luna*,
    136 S. Ct. 305 (2015) ....................................................................... 17

*NCNB Tex. Nat'l Bank v. Johnson*,
    11 F.3d 1260 (5th Cir. 1994)................................................................. 2

*Pearson v. Callahan*,
    555 U.S. 223 (2009) ......................................................................... 17

*R2 Invs. LDC v. Phillips*,
    401 F.3d 638 (5th Cir. 2005)................................................................. 2

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001)................................................................. 4

*Sherbert v. Verner*,
    374 U.S. 398 (1963) ......................................................................... 13

*Siegert v. Gilley*,
    500 U.S. 226 (1991) ........................................................................... 5

*Smart v. Holder*,
    368 F. App'x 591 (5th Cir. 2010) ........................................................ 21

*State Farm Mut. Auto. Ins. Co. v. Campbell,*
    538 U.S. 408 (2003) ............................................................................... 21

*Vanderklok v. United States,*
    868 F.3d 189 (3d Cir. 2017) ................................................................ 11

*Vann v. City of Southaven,*
    884 F.3d 307 (5th Cir. 2018) ............................................................... 17

*Vega v. United States,*
    881 F.3d 1146 (9th Cir. 2018) ............................................................... 9

*Verners v. McClure,*
    No. 5:14-CV-92, 2015 WL 2374412 (E.D. Tex. May 15, 2015) ........................ 14

*Wisconsin v. Yoder,*
    406 U.S. 205 (1972) ............................................................................... 13

*Wooley v. City of Baton Rouge,*
    211 F.3d 913 (5th Cir. 2000) ............................................................... 17

*Wyatt v. Fletcher,*
    718 F.3d 496 (5th Cir. 2013) ............................................................... 17

*Ziglar v. Abbasi,*
    137 S. Ct. 1843 (2017) ........................................... 6–7, 7, 8, 9, 10, 11, 15

## Statutes, Rules, and Other Authorities

18 U.S.C. § 1964(c) ..................................................................................... 15

18 U.S.C. § 4001(b) ..................................................................................... 12

18 U.S.C. § 4042(a) ..................................................................................... 12

28 C.F.R. §§ 542.10–.19 ................................................................................ 9

28 U.S.C. § 1441 .......................................................................................... 22

28 U.S.C. § 1442 .......................................................................................... 22

28 U.S.C. § 1442(a)(1) .................................................................................. 4

28 U.S.C. § 2410(a) ...................................................................................... 22

28 U.S.C. § 2679(b)(1) ............................................................................... 16

42 U.S.C. § 1983 ....................................................................................... 14

42 U.S.C. § 1997e ..................................................................................... 10

42 U.S.C. § 1997e(e) .................................................................................. 20

42 U.S.C. §§ 2000bb *et seq.* ......................................................................... 1

42 U.S.C. § 2000bb(a)(4) ............................................................................ 13

42 U.S.C. § 2000bb(a)(5) ............................................................................ 13

42 U.S.C. § 2000bb(b) ................................................................................ 13

42 U.S.C. § 2000bb-1(c) ............................................................................. 13

42 U.S.C. § 2000bb-2(4) ............................................................................. 20

42 U.S.C. § 2000cc-2 ................................................................................. 14

47 U.S.C. § 605(e)(3) ................................................................................ 14

50 U.S.C. § 1810 ...................................................................................... 14

Fed. R. Civ. P. 12(b)(1) ........................................................................... 2, 4

Fed. R. Civ. P. 12(b)(6) ............................................................................. 2

Fed. R. Evid. 201 ..................................................................................... 2

H.R. Rep. 103-88 (1993) ............................................................................ 15

S. Rep. No. 103-111 (1993) ......................................................................... 15

Tex. Prac. & Rem. Code §§ 110.001 *et seq.* ..................................................... 16

## I.    Introduction

This case filed by federal inmate Lisa Biron arises out of the confiscation by prison officials of a 144-page manuscript written by Biron in prison.  (*See* Doc.[1] 1-5 (complaint).)  Claiming that the manuscript was the product of "Biblical study and research on the Christian view of morality regarding sexual conduct," Biron—who was convicted of a number of sex offenses—asserts that prison officials violated her rights under federal and state law by confiscating the manuscript.  Biron seeks money damages from two of the defendants in their personal capacities under *Bivens*[2] and a federal statute, the Religious Freedom Restoration Act (RFRA).[3]  She also seeks declaratory and injunctive relief against all three defendants in their official capacities.

The defendants now move to dismiss Biron's complaint in its entirety.  As explained below, the personal-capacity damages claims should be dismissed because: (1) Biron cannot show that a *Bivens* remedy is available, nor can she show that a claim for money damages is authorized by RFRA or any other source of law; and (2) even if such claims were theoretically possible, Biron's allegations fail to show any violation of clearly established law and fail to state a claim for relief generally, and thus the personal-capacity defendants are entitled to qualified immunity.

Biron's official-capacity claims should likewise be dismissed.  Such claims are considered claims against the government itself, but Biron fails to show a waiver of

---

[1] "Doc. __" citations refer by number to the items on the docket of this action.

[2] *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[3] *See* 42 U.S.C. §§ 2000bb *et seq.*

sovereign immunity. Biron originally filed this suit in state court before it was removed to this Court by the defendants. The doctrine of derivative jurisdiction therefore applies and mandates dismissal because Congress has never expressly consented to suit in state court on claims of the type asserted by Biron.

For these reasons, and as discussed in more detail below, this case should be dismissed under Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

## II.       Background

Biron was previously convicted of a number of federal sex offenses, including sexual exploitation of a child, transportation of a minor with intent to engage in criminal sexual activity, and possession of child pornography. *See United States v. Biron*, No. 12-CR-140-01-PB (D.N.H.) (judgment entered May 28, 2013).[4] The victim of these crimes was Biron's minor daughter, and a New Hampshire family court ordered the daughter removed from Biron's custody and directed Biron to "seek treatment" and "follow the recommendations arising out of her treatment addressing her sexually abusive behaviors." *See In re R. B.* [redacted], No. 656-2012-JV-326, at 3–4 (N.H. 9th Cir. Fam. Div.—Manchester) (order signed Dec. 4, 2012); *see also Biron v. Upton*, 737 F. App'x 713, 715 (5th Cir. 2018) (discussing Biron's criminal convictions and the family court

---

[4] The defendants request that the Court take judicial notice of the adjudicative facts of Biron's other court cases, including her criminal conviction. *See* Fed. R. Evid. 201; *Garcia v. Kerry*, 557 F. App'x 304, 309 (5th Cir. 2014) (explaining that a prior criminal conviction was the proper subject for judicial notice (citing *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 640 n.2 (5th Cir. 2005); *NCNB Tex. Nat'l Bank v. Johnson*, 11 F.3d 1260, 1263 n.2 (5th Cir. 1994))). Information about Biron's criminal case is available at *Biron v. United States*, No. 16-CV-108-PB, 2017 WL 4402394, at *1–3 (D.N.H. Oct. 2, 2017), as well as on the publicly available docket maintained by the United States District Court for the District of New Hampshire. *See United States v. Biron*, No. 12-CR-140-01-PB (D.N.H.).

order).[5]  Biron is currently incarcerated at a federal prison in Minnesota, but was previously incarcerated at FMC Carswell in Fort Worth during the time period relevant to this suit.  (*See* Doc. 1-5.)

Biron's complaint explains that in September 2015, defendant E. (Emily) Dixon, an FMC Carswell staff psychologist, removed from Biron's possession a 144-page "manuscript draft" that Biron had written.  (Doc. 1-5, ¶ 8.)  Biron's complaint does not describe the contents of this manuscript other than to say that it "contained the documentation and information gleaned from hours of Biblical study and research on the Christian view of morality regarding sexual conduct."  (Doc. 1-5, ¶ 9.)  Biron states that God directed her to study this matter and record her conclusions, and that this represented a sincerely-held religious belief on her part.  (Doc. 1-5, ¶ 10–11.)

According to Biron, Dixon's act of removing the manuscript from Biron's possession violated the First and Fifth Amendments, RFRA, and unspecified "Texas law."  (Doc. 1-5, ¶ 12.)  Biron makes similar allegations against defendant Leticia Armstrong, another FMC Carswell staff psychologist, for having "permanently confiscated" the manuscript after Dixon initially removed it from Biron's possession.  (Doc. 1-5, ¶ 13.)  And Biron alleges that defendant Jody Upton, as warden of FMC Carswell, "failed to intervene to protect Ms. Biron's civil rights and religious liberties" after she sent him an email about the situation.  (Doc. 1-5, ¶ 15.)

Biron asserts claims against Dixon and Armstrong in their personal capacities for

---

[5] A copy of the New Hampshire family court order is available on PACER in the record of another of Biron's cases, *Biron v. Upton*, No. 4:14-CV-823-O (N.D. Tex.) (specifically, at Doc. 19 in No. 4:14-CV-823-O, at PageID 120–26).

compensatory and punitive damages. (Doc. 1-5, ¶¶ 7, 17, 21.) She also asserts claims against all three defendants—Dixon, Armstrong, and Upton—in their official capacities for declaratory and injunctive relief. (Doc. 1-5, ¶¶ 6, 18–20.) Biron originally filed this case in state court, but the defendants removed it to this Court under 28 U.S.C. § 1442(a)(1) (the federal-officer removal statute). (*See* Doc. 1.) The defendants now move to dismiss Biron's complaint in its entirety, and Dixon and Armstrong invoke qualified immunity as a defense to the personal-capacity claims against them.

## III.  Legal Standards

### A.  Rule 12(b)(1).

Under Rule 12(b)(1), a case is properly dismissed when the court "lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* (citation omitted).

### B.  Rule 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

## C.   Qualified immunity.

Qualified immunity insulates a government official from civil liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant relies on qualified immunity, the burden is on the plaintiff to negate this defense. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010).

To overcome qualified immunity, a plaintiff must "plead[] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow*, 457 U.S. at 818). In conducting this analysis, it should not be assumed that the plaintiff has stated a claim, i.e., asserted a violation of some right. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). Rather, there must be a certainty that, if the facts alleged by the plaintiff are true, a violation has clearly occurred. *Connelly v. Comptroller of the Currency*, 876 F.2d 1209, 1212 (5th Cir. 1989).

For a right to be "clearly established," the right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Individual liability thus turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law at the time. *Hunter v. Bryant*, 502 U.S. 224, 227–28 (1991); *Anderson*, 483 U.S. at 639–40. "[A]n allegation of malice is not sufficient to defeat immunity if the

defendant acted in an objectively reasonable manner." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

### IV.     Argument and Authorities

Biron's complaint should be dismissed in its entirety. As discussed below, her claims for money damages are not cognizable and fail to overcome the personal-capacity defendants' qualified immunity. And no jurisdiction exists for her claims for declaratory and injunctive relief against the defendants in their official capacities.

**A.     Biron's claims for money damages (1) are not cognizable and, in any event, (2) fail to overcome the personal-capacity defendants' qualified immunity.**

Dismissal of the personal-capacity claims against Dixon and Armstrong is warranted for two independent reasons. First, Biron cannot show that any claim for money damages is available. And second, even if such claims were available, the defendants are entitled to qualified immunity.

**1.     No damages claim is available to Biron.**

Biron seeks damages directly under the Constitution pursuant to *Bivens* for alleged violations of the First and Fifth Amendments, and also for an alleged violation of RFRA. As explained below, though, no such damages remedy is available under either *Bivens* or RFRA. In addition, although the complaint briefly references Texas law, no viable Texas cause of action is identified.

**a.     No *Bivens* remedy should be implied because Biron's claims arise in a new context and special factors counsel against expanding *Bivens* here.**

In *Ziglar v. Abbasi*, the Supreme Court emphasized that implying a *Bivens* remedy

"is now a 'disfavored' judicial activity," and that whenever a case presents a new *Bivens*

context, a judicially-created damages remedy should not be recognized if any "special

factors" counsel hesitation in doing so.  137 S. Ct. 1843, 1857 (2017).  "If the case is

different in a meaningful way from previous *Bivens* cases decided by [the Supreme]

Court, then the context is new" and courts should be cautious of recognizing any implied

*Bivens* remedy.  *Id.* at 1859.

Biron's claims under the First and Fifth Amendments present a new *Bivens*

context because they are meaningfully different from any previous *Bivens* cases decided

by the Supreme Court.  In *Abbasi*, the Court explained that it has recognized *Bivens*

claims in only three specific contexts:

> (1) in *Bivens* itself, for an alleged Fourth Amendment
> violation by federal agents in conducting a warrantless search
> and seizure in a home;
>
> (2) in *Davis v. Passman*, 442 U.S. 228 (1979), for a Fifth
> Amendment equal-protection claim based on gender
> discrimination by a Congressman against an employee; and
>
> (3) in *Carlson v. Green*, 446 U.S. 14 (1980), for an Eighth
> Amendment claim against prison officials for the fatal failure
> to treat a prisoner's asthma.

*Abbasi*, 137 S. Ct. at 1854–55.  "These three cases—*Bivens*, *Davis*, and *Carlson*—

represent the only instances in which the Court has approved of an implied damages

remedy under the Constitution itself."  *Id.* at 1855.  Biron's claims are distinguishable

from these three cases and thus present a new *Bivens* context.  Indeed, *Carlson* is the only

one of the three cases identified in *Abbasi* that had anything to do with the rights of an

inmate, and it involved an alleged failure to provide medical treatment for an inmate with

a "serious[]" and "chronic asthmatic condition" known to prison officials.  *Carlson*, 446 U.S. at 16 n.1.  Biron's claims, in contrast, are not brought under the Eighth Amendment as in *Carlson* and do not relate to medical care, nor are they analogous to the claims in *Passman* or *Bivens*.  Significantly, the Supreme Court has never recognized a *Bivens* remedy under the First Amendment (including for any violation of the right to free exercise of religion) or for a Fifth Amendment due-process violation.  Accordingly, Biron's purported *Bivens* claims arise in new context.

When a purported *Bivens* claim is asserted in a new context, *Abbasi* requires consideration of whether "special factors" counsel against inferring such a cause of action in the absence of "affirmative action by Congress."  *Abbasi*, 137 S. Ct. at 1857.  As the Supreme Court clarified in *Abbasi*, this "inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."  *Id.* at 1857–58.  A *Bivens* remedy should not be inferred if "there are sound reasons to think Congress *might* doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong."  *Id.* at 1858 (emphasis added).  Relatedly, "if there is an alternative remedial structure present in a certain case," the existence of that alternative process "alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."  *Id.*  Applying these principles, Biron cannot show that a *Bivens* claim should be recognized here, especially given the special factors present.

(1)    Alternative processes are available and foreclose a *Bivens*
remedy.

One key consideration against implying a *Bivens* remedy in a new context is the

availability of alternative processes to address the allegedly improper actions by

government officials.  For example, inmates like Biron can seek "an injunction requiring

the warden to bring his prison into compliance" or can seek "some other form of

equitable relief." *Abbasi*, 137 S. Ct. at 1865.  And this "existence of alternative remedies

usually precludes a court from authorizing a *Bivens* action." *Id.*  Indeed, Biron has

pursued such an alternative remedy, by filing official-capacity claims against the

defendants for declaratory and injunctive relief.[6]  (*See* Doc. 1-5, ¶¶ 18–20.)

The Federal Bureau of Prisons' administrative remedy program is another

alternative process available to inmates like Biron.  Under this program, inmates can file

grievances about any aspect of their confinement, the agency must provide written

responses in specified timeframes, and prisoners may appeal institution-level responses to

the agency's regional and central offices. *See* 28 C.F.R. §§ 542.10–.19.  Numerous

courts post-*Abbasi* have recognized that the administrative remedy program is an

alternative process and a special factor that forecloses expansion of the *Bivens* remedy.

*See, e.g.*, *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018); *Gonzalez v. Hasty*,

---

[6] The fact that the defendants contend that jurisdiction is absent for Biron's official-capacity claims in this case does not change the calculus, because it is the *availability* of the alternative remedy that is key, not whether the person is able to ultimately succeed in a particular case under that remedy. *See Andrews v. Miner*, 301 F. Supp. 3d 1128, 1134 (N.D. Ala. 2017) (rejecting expansion of *Bivens* into a new context after noting that the prisoner was able to pursue administrative remedies, "albeit unsuccessfully"); *see also Bush v. Lucas*, 462 U.S. 367, 388 (1983) (explaining that the alternative process need not provide "complete relief" to the plaintiff).

269 F. Supp. 3d 45, 60 (E.D.N.Y. 2017); *Andrews v. Miner*, 301 F. Supp. 3d 1128, 1134

(N.D. Ala. 2017); *Muhammad v. Gehrke*, No. 2:15-CV-334, 2018 WL 1334936, at *4

(S.D. Ind. Mar. 15, 2018); *Howard v. Lackey*, No. 7:16-CV-129, 2018 WL 1157547, at

*3 (E.D. Ky. Mar. 5, 2018); *Buenrostro v. Fajardo*, No. 1:14-CV-75, 2017 WL 6033469,

at *3 (E.D. Cal. Dec. 5, 2017).

> (2)   Additional special factors further counsel against *Bivens*
> expansion here.

In addition to the alternative processes discussed above, one of the most

significant special factors, emphasized repeatedly in *Abbasi*, is the concern for

separation-of-powers principles. *See Abbasi*, 137 S. Ct. at 1857 ("When a party seeks to

assert an implied cause of action under the Constitution itself, . . . separation-of-powers

principles are or should be central to the analysis."). *Abbasi* recognized that Congress's

failure to provide a damages remedy is both "relevant" and "telling" when it has

regulated extensively in a specific arena and made specific policy choices as to how

complaints should be resolved. *Id.* at 1862.  Here, Congress has legislated extensively

with respect to prisoners' rights, and "legislative action suggesting that Congress does not

want a damages remedy is itself a factor counseling hesitation." *Id.* at 1865.  "Some 15

years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of

1995, which made comprehensive changes to the way prisoner abuse claims must be

brought in federal court." *Id.* (citing 42 U.S.C. § 1997e).  "So it seems clear that

Congress had specific occasion to consider the matter of prisoner abuse and to consider

the proper way to remedy those wrongs." *Id.*  However, the Prison Litigation Reform Act

"does not provide for a standalone damages remedy against federal jailers," meaning that Congress could have extended the *Carlson* damages remedy to cases involving other types of prisoner mistreatment, but chose not to. *See id.*

Additional special factors that weigh against extending *Bivens* to the type of First and Fifth Amendment claims asserted by Biron are the system-wide costs associated with the creation of a damages remedy absent congressional action. As *Abbasi* instructs, "the decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide." *Abbasi*, 137 S. Ct. at 1858. This includes "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself . . . ." *Id.* In the prison context, these burdens and costs are particularly high due, in part, to the sheer volume of potential litigation arising from the creation of a *Bivens* remedy—there are more than 180,000 federal inmates and over 35,000 BOP employees. *See* Fed. Bureau of Prisons, About Our Agency, https://www.bop.gov/about/agency/ (visited April 26, 2019).

Yet another special factor counseling hesitation here is the difficulty in creating a workable cause of action. *See Abbasi*, 137 S. Ct. at 1864–65 (discussing the lack of clarity as to the legal standard for a purported *Bivens* claim alleging that a warden allowed staff to abuse a pretrial detainee); *Vanderklok v. United States*, 868 F.3d 189, 209 (3d Cir. 2017) (recognizing the "inherent uncertainty surrounding" the applicable legal standard as "a factor counseling hesitation" in expanding *Bivens*). Congress and the Supreme Court have repeatedly deferred to the Attorney General and prison administrators' expertise because "the problems that arise in the day-to-day operation of a

corrections facility are not susceptible of easy solutions." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *see also* 18 U.S.C. §§ 4001(b), 4042(a).  Biron's claims relate to prison officials' attempts to manage Biron's rehabilitation as a sex offender and are matters of prison administration not subject to any clear legal standard so as to make a *Bivens* claim viable.  Moreover, by not legislating a *Bivens*-type remedy in this area despite ample opportunity to do so, it is clear that Congress does not intend for such a remedy to be created.

(3)     Summary of *Abbasi* analysis.

Biron's claims represent a new context and special factors counsel against expanding *Bivens* to include them.  Accordingly, as other courts have concluded when confronted with similar purported claims under the First and Fifth Amendments, no *Bivens* remedy is available.  *See Bistrian v. Levi*, 912 F.3d 79, 95, 96 (3d Cir. 2018) (rejecting a prisoner's attempt to proceed under *Bivens* on a First Amendment claim, and explaining that "the Supreme Court has never recognized a *Bivens* remedy under the First Amendment" and that, "nationwide, district courts seem to be in agreement that, post-*Abbasi*, prisoners have no right to bring a *Bivens* action for violation of the First Amendment" (cleaned up)); *Hernandez v. Mesa*, 885 F.3d 811, 817 (5th Cir. 2018) (en banc) (rejecting a proposed Fifth Amendment *Bivens* claim that the court explained would require the acceptance of "two novel theories"); *Gonzalez*, 269 F. Supp. 3d at 59–63 (no *Bivens* remedy for Fifth Amendment claim); *Mercer v. Matevousian*, No. 1:18-CV-265, 2018 WL 3917969, at *2–3 (E.D. Cal. Aug. 14, 2018) (same).

### b.   No claim for money damages is available under RFRA.

Biron likewise cannot show that RFRA authorizes a claim for money damages against federal officials in their personal capacities. RFRA was enacted by Congress in an attempt to statutorily reverse the Supreme Court's decision in *Employment Division v. Smith*, 494 U.S. 872 (1990). In Congress's view, *Smith* had improperly narrowed the First Amendment's protection of the free exercise of religion. *See* 42 U.S.C. § 2000bb(a)(4) (asserting that *Smith* "virtually eliminated the requirement that the government justify burdens on religious exercise imposed by laws neutral toward religion"). Congress instead favored the standard that had prevailed prior to *Smith*, specifically, "the compelling interest test as set forth in prior Federal court rulings" like *Sherbert v. Verner*, 374 U.S. 398 (1963), and *Wisconsin v. Yoder*, 406 U.S. 205 (1972). *See id.* § 2000bb(a)(5). Finding that these cases established a "workable test for striking sensible balances between religious liberty and competing prior governmental interests," Congress enacted RFRA in an attempt to restore the *Sherbert/Yoder* doctrinal standard—hence the title Religious Freedom *Restoration* Act—and created a private right of action whereby a person can obtain "appropriate relief against a government" for a RFRA violation. *See id.* §§ 2000bb(a)(5), (b), 2000bb-1(c).

There is no dispute that RFRA's provision for "appropriate relief against a government" in 42 U.S.C. § 2000bb-1(c) authorizes plaintiffs to seek declaratory or injunctive relief for claimed RFRA violations (in an appropriate suit[7]). *See, e.g., Insight*

---

[7] As discussed further below in connection with Biron's official-capacity claims, this particular suit is not an appropriate one for Biron's requests for declaratory or injunctive relief, because jurisdiction is lacking.

*for Living Ministries v. Burwell*, No. 4:14-CV-675, 2014 WL 6706921, at *2, 5 (E.D.
Tex. Nov. 25, 2014) (granting a preliminary injunction on a RFRA claim). RFRA does
not, however, expressly authorize any private right of action for damages against federal
employees in their personal capacities, and neither should any such damages remedy be
implied. As one court in the Southern District of Texas explained when dismissing a
damages claim based on alleged RFRA violations in a federal prison, "RFRA does not
contemplate recovery from individuals." *Bloch v. Samuels*, No. H-04-4861, 2006 WL
2239016, at *7 (S.D. Tex. Aug. 3, 2006).[8]

When Congress wants to create a statutory damages remedy, it knows how to use
express language to that effect. *See, e.g.*, 18 U.S.C. § 1964(c) (authorizing the recovery
of "threefold damages" under RICO); 47 U.S.C. § 605(e)(3) (specifying that a court "may
award damages" for violations of the Telecommunications Act); 50 U.S.C. § 1810
(authorizing "actual damages" and "punitive damages" for violations of the Foreign
Intelligence Surveillance Act); *see also* 42 U.S.C. § 1983 (allowing for liability in "an

---

[8] The Fifth Circuit appears not to have addressed whether RFRA authorizes an action for money damages
against federal officials in their personal capacities, but it has made clear that RFRA's similarly-worded
sister statute, the Religious Land Use and Institutionalized Persons Act (RLUIPA), does not authorize
such damages against state officials in their personal capacities. *See Copeland v. Livingston*, 464 F.
App'x 326, 330 (5th Cir. 2012). RLUIPA was enacted after the Supreme Court held, in *City of Boerne v.
Flores*, 521 U.S. 507 (1997), that application of RFRA to the states was unconstitutional. Post-*Boerne*,
RFRA remains in place as to the federal government, while RLUIPA—the language of which mirrors
RFRA's in many respects, including with respect to the creation of a private right of action—applies to a
more limited sphere of state action. *See* 42 U.S.C. § 2000cc-2. The standards applied under RFRA and
RLUIPA are the same. *Verners v. McClure*, No. 5:14-CV-92, 2015 WL 2374412, at *5 n.1 (E.D. Tex.
May 15, 2015) (citing *Holt v. Hobbs*, 135 S. Ct. 853, 859–60 (2015)).

Courts outside of the Fifth Circuit have come to different conclusions about whether RFRA authorizes a
damages claim against federal officials in their personal capacities. *Compare Mack v. Warden Loretto
FCI*, 839 F.3d 286, 301 (3d Cir. 2016) (damages remedy available), *with Ajaj v. United States*, No. 15-
CV-992, 2016 WL 6212518, at *5 (D. Colo. Oct. 25, 2016) (damages remedy not available).

action at law," in addition to a "suit in equity," for certain civil-rights violations under color of state law).  But no such language appears in RFRA, and the statute's legislative history lends further support to the conclusion that money damages are not available. The Senate Judiciary Committee's report explained:

> To be absolutely clear, the act does not expand, contract or alter the ability of a claimant to obtain relief in a manner consistent with the Supreme Court[]'s free exercise jurisprudence under the compelling governmental interest test prior to *Smith*.

S. Rep. No. 103-111, at 12 (1993).  The House Judiciary Committee similarly noted that RFRA was not intended to "expand, contract or alter the ability of a claimant to obtain relief" as was available prior to *Smith*.  H.R. Rep. 103-88, at 8 (1993).

Congress's disclaimer of any intention to displace the existing remedial scheme for alleged violations of religious liberty is significant.  At the time *Smith* was decided, the Supreme Court had never recognized a *Bivens* remedy for alleged violations of the free exercise of religion (nor has it recognized such a remedy since).  *See Abbasi*, 137 S. Ct. at 1854–55 (explaining what *Bivens* claims have been recognized).  Accordingly, to read RFRA as allowing a claim for money damages against federal officials in their personal capacities would be to greatly expand, rather than merely "restore," the remedies available prior to *Smith*.  Accordingly, Biron cannot show that a private right of action for money damages is available to her under RFRA, much less that the right to such relief is clearly established in the Fifth Circuit.

       c.      **Biron's cursory references to Texas law fail to support any claim for damages.**

In addition to invoking the First and Fifth Amendments and RFRA, Biron's complaint also contains a few cursory references to "Texas law" and "the Texas Constitution." (Doc. 1-5, ¶¶ 14, 19.) But no further explanation is provided, nor is any specific Texas cause of action identified. Biron thus fails to state any claim under Texas law.[9] In any event, the Westfall Act immunizes federal officials against liability for alleged violations of state law in the scope of federal employment, and would thus bar any conceivable personal-capacity claim under Texas law. *See* 28 U.S.C. § 2679(b)(1).

       2.      **Even if a damages remedy were theoretically available, the personal-capacity defendants are entitled to qualified immunity.**

Even if *Bivens* or RFRA did allow damages claims of the type contemplated by Biron, the personal-capacity defendants would still be entitled to qualified immunity and dismissal of all claims against them. A "plaintiff has the burden to negate the assertion of qualified immunity" once that defense has been raised. *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009). To establish that qualified immunity does not apply, a plaintiff must show that (1) the defendant "violated a statutory or constitutional right" of the plaintiff's and that (2) "the right was 'clearly established' at the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc). The analysis may begin at either step—and can also end there if the plaintiff cannot carry her

---

[9] Biron may have had in mind a "mini RFRA" statute enacted by the Texas legislature and modeled on the federal RFRA, but that Texas statute does not support any claim here. The Texas statute by its own terms applies only to the state and its political subdivisions and agencies, and not to the federal government or federal officials. *See* Tex. Prac. & Rem. Code §§ 110.001 *et seq.*

burden. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). That is the case here no matter where the analysis begins. At the "clearly established law" step, the defendants are entitled to qualified immunity because Biron fails to allege with the necessary specificity the violation of any clearly established constitutional or statutory right. And Biron fails to meet her burden at the first step also, because her allegations fail to state any claim for relief generally.

### a.   No clearly established law supports Biron's claims.

Identifying clearly established law sufficient to negate the defense of qualified immunity requires an "extraordinary showing" from a plaintiff. *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019). "A right is clearly established only if its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Wyatt v. Fletcher*, 718 F.3d 496, 502 (5th Cir. 2013) (quoting *Wooley v. City of Baton Rouge*, 211 F.3d 913, 919 (5th Cir. 2000)). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742. The plaintiff must identify some case giving notice that certain actions were required or forbidden "in the situation presented," *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018), by pointing to a "controlling precedent that squarely governs the specific facts at issue," *Morrow*, 917 F.3d at 876 (cleaned up).

Given these principles, the Fifth Circuit has stressed that the qualified-immunity

analysis requires framing the relevant question "with specificity and granularity."

*Morrow*, 917 F.3d at 874–75.   Accordingly, just as a plaintiff cannot overcome qualified

immunity on a Fourth Amendment claim by defining the relevant right as "the right to be

free from unreasonable searches and seizures," *City & Cnty. of San Francisco v.*

*Sheehan*, 135 S. Ct. 1765, 1776 (2015), Biron's cursory allegations that removing a

document from her possession violated the First and Fifth Amendments and RFRA—not

to mention unspecified "Texas law"—cannot suffice to overcome the defendants'

qualified immunity.  (*See* Doc. 1-5, ¶ 12.)   Indeed, the fact that Biron lumps together two

separate constitutional amendments, a federal statute, and the entire body of Texas state

law when attempting to plead the alleged violation confirms that she has failed to define

the matter with the necessary "specificity and granularity."  *Morrow*, 917 F.3d at 874–75.

Biron also has not identified, and cannot identify, any precedent from the Fifth

Circuit or the Supreme Court placing the defendants on notice that their actions were in

violation of the Constitution or RFRA.  Again, the burden is on the plaintiff to identify

some clearly established law arising from sufficiently similar factual circumstances.  *See,*

*e.g.*, *Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018) (explaining

that the defendants were entitled to qualified immunity because the plaintiff had "not

carried her burden of pointing this panel to any case that shows, *in light of the specific*

*context of this case*, that the [defendants'] conduct violated clearly established law"

(emphasis added)).  Here, that would require a showing that either the Fifth Circuit or the

Supreme Court has squarely held that the removal by prison psychologists of a sex

offender's writings about "sexual conduct" constitutes a violation of the offender's rights.

In the absence of any such clearly established law, the personal-capacity defendants are entitled to dismissal of all claims against them.

        **b.**    **Biron fails to allege any violation of a constitutional or statutory right, and her claims for damages are also barred by the Prison Litigation Reform Act.**

Biron's pleadings also fail to allege any constitutional or statutory violation generally. As Biron's complaint and the related records of Biron's prior cases that are subject to judicial notice make clear, Biron: (1) was convicted in federal court of various sex offenses; (2) was found by a state family court to need treatment for her sexually assaultive behavior; and (3) while in prison, wrote a manuscript relating to "sexual conduct" (Doc. 1-5, ¶ 9) that two prison psychologists determined needed to be removed from her possession. Under these circumstances, Biron's allegations fail to state any claim for relief. Although prisoners certainly do not lose all First Amendment rights when in prison, a prison regulation violates the First Amendment only if it is not "reasonably related to legitimate penological interests." *Butts v. Martin*, 877 F.3d 571, 584 (5th Cir. 2017). Here, though, Biron's complaint alleges no facts showing that the confiscation of her manuscript was not reasonably related to legitimate penological interests. Although Biron references that she received a final denial of her administrative-remedy requests regarding the manuscript, (Doc. 1-5, ¶ 16), she tellingly declines to inform the Court in her pleadings what explanation for the confiscation was provided to her. Biron has not stated any claim that the defendants' actions were unrelated to legitimate penological interests.

Biron likewise fails to state any claim under the Fifth Amendment or RFRA.

Biron's complaint makes clear that she was afforded an opportunity to meet with a staff psychologist about the manuscript and was also able to challenge its confiscation—albeit unsuccessfully—through the administrative-remedy process.  (*See* Doc. 1-5, ¶¶ 13, 16.) No facts are alleged showing why these processes should be considered constitutionally inadequate under the Fifth Amendment, and inmates have no due-process right to have grievances resolved to their satisfaction.  *Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005).  Biron also fails to allege facts showing that she was required to "engage in conduct that seriously violates [her] religious beliefs," as would be necessary to state a RFRA claim.  *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015) (internal quotation marks and citation omitted).[10]  Indeed, Biron references that she is able to pray and study the Bible, and she does not contend that any defendant has prohibited her from doing so; her only complaint is that materials of an admittedly sexual nature were confiscated from her.

Finally, the Prison Litigation Reform Act serves as an additional, independent bar to Biron's claims.  Biron is asserting claims for compensatory and punitive damages, but the Prison Litigation Reform Act precludes any recovery of compensatory damages when the inmate has not suffered a physical injury in custody, and Biron has failed to allege any such injury.  *See* 42 U.S.C. § 1997e(e); *Geiger*, 404 F.3d at 374 (explaining that a claim for compensation for an alleged First Amendment violation was "barred by the physical injury requirement of § 1997e(e)").  Moreover, without any viable claim of a violation by the defendants, there is no basis for punitive damages, and Biron has in any

---

[10] *Holt* was a RLUIPA case, but as noted previously, RFRA and RLUIPA are considered sister statutes, and RFRA in fact defines religious exercise by cross-reference to RLUIPA. *See* 42 U.S.C. § 2000bb-2(4).

event "not alleged facts showing that the defendants' conduct was so egregious or reprehensible as to warrant punitive damages." *Bloch*, 2006 WL 2239016, at *6 (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003); *BMW of N. Amer. Inc. v. Gore*, 517 U.S. 559, 575 (1996)).

**B.      Biron cannot establish jurisdiction for her official-capacity claims for declaratory and injunctive relief.**

Biron's remaining claims for declaratory and injunctive relief against the defendants in their official capacities are barred by sovereign immunity, in conjunction with the doctrine of derivative jurisdiction. Claims against government officials in their official capacities are considered claims against the government itself. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Smart v. Holder*, 368 F. App'x 591, 593 (5th Cir. 2010). But the government enjoys sovereign immunity from suit unless Congress has specifically consented to the suit, *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983), and the plaintiff bears the burden of showing a waiver of immunity, *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009). Congress's waiver of immunity "must be unequivocally expressed in statutory text . . . and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (internal citations omitted).

Here, Biron has not identified, and cannot identify, any waiver of immunity that would permit claims for declaratory and injunctive relief to go forward. (*See* Doc. 1-5.) This failing is alone sufficient to warrant dismissal of all official-capacity claims under Rule 12(b)(1). *See Freeman*, 556 F.3d at 334.

The doctrine of derivative jurisdiction additionally precludes Biron from

proceeding with any official-capacity claims. Biron initially filed this case in state court before it was removed to this Court by the defendants. (*See* Doc. 1.) The doctrine of derivative jurisdiction provides that "when a case is removed from state to federal court, the jurisdiction of the federal court is derived from the state court's jurisdiction." *Lopez v. Sentrillon Corp.*, 749 F.3d 347, 350 (5th Cir. 2014); *see also Colonial Cnty. Mut. Ins. Co. v. United States*, No. SA-15-CV-917-XR, 2015 WL 7454698, at *2 (W.D. Tex. Nov. 23, 2015).[11] "Thus, where the state court lacks jurisdiction of the subject matter or of the parties, the federal court acquires none . . . ." *Lopez*, 749 F.3d at 350 (cleaned up). Biron has not shown, and cannot show, that the government has consented to be sued on claims under the Constitution, RFRA, or "Texas law" in state court such that the state court would have had jurisdiction over her official-capacity claims. There is no general waiver of the government's immunity so as to permit state-court suits against federal agencies or federal officials sued in official capacities. *See Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 85–86 (1991) (recounting the history of federal agencies' and officials' sovereign immunity to suit in state court). Moreover, in instances in which Congress has chosen to waive the government's immunity to suit in state court, it has used language clearly allowing for that result. *See, e.g.*, 28 U.S.C. § 2410(a) (authorizing certain quiet-title and other real-property suits "in any State court having jurisdiction"). No such language allowing for suit in state court against the government can be found in RFRA or in any other federal statute, much less language providing a

---

[11] The doctrine of derivative jurisdiction no longer applies to cases removed under 28 U.S.C. § 1441, but does still apply to cases, like this one, removed under 28 U.S.C. § 1442. *See Lopez*, 749 F.3d at 350.

waiver of immunity "unequivocally." *See Lane*, 518 U.S. at 192.  Accordingly, because

no jurisdiction existed for Biron's official-capacity claims in state court, they cannot

proceed in this Court after removal.  *See also Morgan v. FBI*, No. A-16-CV-1290-LY,

2017 WL 1322251, at *2 (W.D. Tex. Apr. 10, 2017) (explaining that the doctrine of

derivative jurisdiction required the dismissal of claims that had originally been filed in

state court for injunctive relief against various federal defendants).

### V.      Conclusion

For all these reasons, the Court should dismiss Biron's complaint.  The defendants

further request that costs be awarded against Biron.

Respectfully submitted,

ERIN NEALY COX
United States Attorney

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8626
Facsimile:   214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants

<u>Certificate of Service</u>

On April **29**, 2019, I served the foregoing document (and its accompanying

proposed order) on plaintiff Lisa Biron by mailing it to her by certified mail (#7018 2290

0001 4480 3720), addressed as follows:

      Lisa Biron # 12775-049
      FCI Waseca
      P.O. Box 1731
      Waseca, MN 56093

                    _Brian W. Stoltz_
                    Brian W. Stoltz
                    Assistant United States Attorney