

```
                    UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF TEXAS
                          FORT WORTH DIVISION
```

Lisa A. Biron )
    Plaintiff, )
)
)
v. ) No. 4:19-cv-322 - A
)
) Civil Complaint for Damages,
FMC Carswell Warden Jody Upton, ) Declaratory and Injunctive Relief
et al., )
    Defendants. ) Jury Trial Requested
)
)

### First Verified Amended Complaint

Plaintiff, Lisa A. Biron, pro se, pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, hereby amends her Complaint.

1. Plaintiff is a federal inmate presently incarcerated in Federal Correctional Institution, Waseca, MN. The events giving rise to the within claims occurred at Federal Medical Center, Carswell, in Fort Worth, Texas.

2. Plaintiff amends to bring claims for damages under the Fifth Amendment's Due Process and Equal Protection Clauses, the Religious Freedom Restoration Act ("RFRA") (42 U.S.C. §§ 2000bb et seq.), the Administrative Procedures Act ("APA"), the First Amendment's Free Exercise, Freedom of Expression, and Establishment Clauses, and for declaratory judgment under 28 U.S.C. §§ 2201 and 2202 and for injunctive relief under 28 U.S.C. § 2284 and Fed. R. Civ. P. 65, to redress the deprivation, under color of federal law, of rights secured under the Constitution and Laws of the United States of America. She requests a jury trial.

3. Defendant Mr. Jody Upton was[1], at all times relevant to this Complaint,

---

1 As of April 26, 2019, Mr. Upton has retired from the Bureau of Prisons.

the Warden of FMC Carswell. He was legally responsible for the operations of FMC Carswell and for protecting the constitutional rights of the inmates housed therein.

4. Defendant Leticia A. Armstrong is a psychologist involved in sex offender treatment and a correctional officer at FMC Carswell.

5. Defendant Emily Dixon is a psychologist involved in sex offender treatment and a correctional officer at FMC Carswell.

6. Warden Upton was sued in his official capacity only.

7. Leticia Armstrong and Emily Dixon are sued in their individual and official capacities.

## Claims

8. As set forth in the following claims, Defendants have acted to force treatment and behavioral change upon Ms. Biron through the secular humanistic discipline of psychology. Ms. Biron was convicted of sex offenses, and Defendants have disregarded her constitutional right to refuse secular programming that contradicts her religious beliefs. Defendants' act of confiscating her writing was not to protect the safety and security of the institution or to protect the public, but was an act of unconstitutional sensorship which violated Ms. Biron's religious liberties and sought to force the religion of secular humanism upon her. See Torasco v. Watkins, 367 U.S. 488, 495, n.11 (1961).

9. Apart from unconstitutional forced sex offender treatment, inmates are permitted under 28 C.F.R. §§ 551.81-83 and FBOP program statement P. 5350.27 (Inmate Manuscripts) to "prepare a manuscript for private use or for publication while in custody without staff approval.

10. It is Ms. Biron's sincerely held religious belief that man is created by the triune-God (Father, Son, and Holy Spirit) in His image as body,

2

soul, and spirit, and that all of mankind's moral failings result from his separation from God, which is also known as spiritual death, or man's fallen nature. This state of separation from God was caused by Adam and Eve's original rebellion against Him.

11. It is Ms. Biron's sincerely held religious belief that the only way to overcome these moral failings is through the reconnection to God through belief and reliance on the finished, sacrificial work of the Lord Jesus Christ on the cross which paid for mankind's penaly for his sin — past, present, and future. This belief and reliance in Christ results in the forgiveness of sin, a regenerated spirit, and the eternal reconnection to God the Father. Once this reconnection occurs, the Holy Spirit comes to reside in the believer allowing that believer to submit to God and to not fulfill the sinful desires of the fallen nature. It is Ms. Biron's sincerely held religious belief that this power from God is the only way to truly overcome moral failures and to find freedom from sinful behavioral patterns. This overcoming power (the Holy Spirit) that now exists in the believer is made manifest in the believer's life (her body and soul) through the renewing of the human mind to God's truth through His Word (the Bible) and through communication and fellowship with God Himself.

12. The foregoing truth is diametrically opposed to the philosophical underpinnings of the secular humanistic discipline of psychology that deny the spiritual aspect of the human being and its affect on the human body and soul.

13. It is Ms. Biron's sincerely held religious belief that she was directed by God to research, pray about, and study the Bible concerning God's view of morality involving sex and sexual conduct, and to record these findings in writing for use in her rehabilitation and to help disciple and

educate other Christians in this vital subject.

14. In obedience to God and to her sincerely held religious beliefs, Ms. Biron began this course of study and prayer, and began to write.

15. Thus far, her writing includes a comparison of God's interaction with Israel in the Old Testament, and how God considered their idolatry to be spiritual adultery and fornication. Several Biblical texts are quoted and cited in this regard. The writing also includes analysis of how a Christian's ability to hear from God and to grow in their faith is hampered by sexual immorality. Several Biblical texts are quoted and cited in support of this. Some of the writing contains notes taken by Ms. Biron from sermons of other Christian ministers, and notes from research from books on the subject. The writing includes the relavant application of this information to her life and moral failings.

16. On or about September 25, 2015, despite Ms. Biron's refusal to submit to treatment by Emily Dixon, Defendant Dixon conducted a targeted search of Ms. Biron's locker and removed all 144 pages of this manuscript draft and notes written by Ms. Biron which contained the writing described in paragraph 15. Defendant Dixon told Ms. Biron that the document would be reviewed to see if she would be allowed to have it.

17. To Ms. Biron's knowledge, no other general population inmate at FMC Carswell has had their writing sensored or confiscated. (Comparator Class).

18. Defendant Dixon's removal of this writing from Ms. Biron caused her extreme emotional distress which resulted in panic attacks and an upset stomach because she could not fathom that this incident could happen in the United States of America.

19. On or about October 15, 2015 Leticia Armstrong had Ms. Biron paged to the lieutenant's office. When Ms. Biron arrived, Defendant Armstrong had in her possession Ms. Biron's 144-page manuscript. Defendant Armstrong advised Ms. Biron that her writing would not be returned to her and was permanently confiscated because it was "sexually explicit". The manuscript, which Defendant Armstrong had in her hands, was marked with little yellow stickers throughout the document. Seeing this, Ms. Biron asked Defendant Armstrong to show even one example of this alleged "sexually explicit writing." Armstrong refused. Armstrong insisted that examples of such would be shown to Ms. Biron through the administrative remedy process. This never occurred. Armstrong said the writing was "hard contraband."

20. Ms. Biron's writing is <u>not</u> sexually explicit as that term is defined in the United States Code, or as defined by any reasonable human being on Earth; but even if it were the next <u>Fifty Shades of Grey</u>, Ms. Biron has the unquestionable constitutional right to write anything she wants to as long as it does not threaten the safety and security of the institution or staff, or of the public.

21. Ms. Biron attempted to explain to Defendant Armstrong that her actions were contrary to the Constitution, to wit, Lieutenant Butler (who was present at the time) told Ms. Biron to "Shut the fuck up!"

22. Devastated that her writing had been stolen, and her religious liberties trampled, Ms. Biron again experience panic attacks and an upset stomach.

23. On or about September 30, 2015 (after the writing was taken from the locker but before it was officially confiscated as "hard contraband"), Ms. Biron sent an email to Warden Upton advising him of the situation and ask-

ing him for his help. He failed to intervene to protect Ms. Biron's civil rights and religious liberties.

24. Defendants' actions in confiscating Ms. Biron's writing as "hard contraband" served solely as forced treatment to alter her behavior.

25. Forcing secular humanist treatment and philosophy violates the Establishment Clause.

26. Title 28 C.F.R. § 553.12 defines "hard contraband" as "any item which poses a serious threat to the security of an institution . . . ." Some examples include weapons and intoxicants. While the pen is at times mightier than the sword, the Defendants did not and cannot offer any rationale that suggests Ms. Biron's Christian writing threatens the safety and the security of the institution.

27. On May 2, 2017, Ms. Biron received the final denial of Administrative Remedy # 842574 (dated 4/10/2017) regarding the stolen writing. In order to affirm these Defendants actions, it is improbable that the writing was actually reviewed by anyone during the process because, although Ms. Biron asked for examples of what was considered "sexually explicit", no explanation was given. If the process was a legitimate review process the writing would have been promptly returned to Ms. Biron.

28. Defendants actions and omissions violated the Constitution, Federal Code, Administrative Law, and their own Program Statement.

## Remedies and Relief

29. Ms. Biron seeks compensatory and punitive damages against Leticia Armstrong and Emily Dixon.

30. Ms. Biron's remedy at law, however, is inadequate and incomplete, and she will be irreparable injured by the loss of her writing unless

6

the Court grants declaratory and injunctive relief.

WHEREFORE, Ms. Biron requests this Honorable Court:

31. Grant her a declaration that the acts and omissions described herein violate her rights under the Constitution and under the Law;

32. Grant a preliminary and permanent injunction ordering the Defendants to return Ms. Biron's writing to her;

33. Order the Defendants to refrain from imposing unconsented-to psychological treatment upon Ms. Biron;

34. Award Ms. Biron compensatory and punitive damages against Defendants Armstrong and Dixon to the fullest extent allowed under the law;

35. Grant Ms. Biron her costs and fees incurred in prosecuting this lawsuit; and

36. Grant such other relief as is deemed just and equitable by this Court.

Repectfully submitted

5/15/19
Date

Lisa A. Biron (#12775-049)
FCI Waseca
P.O. Box 1731
Waseca, MN 56093

### Verification

I hereby swear, under penalty of perjury, that the matters and facts in the foregoing First Verified Amended Complaint are true and correct to the best of my knowledge and belief.

5/15/19
Date

Lisa Biron

7

## Certification

I hereby certify that a copy of this First Verified Amended Complaint was served on the Defendants by mailing a copy of same firstclass mail postage prepaid to AUSA Brian Stoltz on this date.

5|15|19
Date

*Lisa Biron*
Lisa Biron

## Declaration of Timely Filing

I hereby swear, under penalty of perjury, that this First Verified Amended Complaint was mailed to this Court by depositing said document firstclass postage prepaid into the inmate legal mail system on this date, and is thus considered filed under the "Prison Mailbox Rule" on this date.

5|15|19
Date

*Lisa Biron*
Lisa Biron

Lisa Biron

12775-049
D

MINNEAPOLIS MN 553

15 MAY 2019 PM 3 L

FORT WORTH DIVISION
RECEIVED
2019 MAY 20 PM 3:22
DEPUTY CLERK

⇔12775-049⇔
Us District Court
Clerk of Court
501 W 10TH ST
Room 310
FORT Worth, TX 76102
United States

MAY 15 2019

76102-975999

Federal Correctional Institution
P.O. Box 1731
Seagoville, TX 75159

MAY 15 2019