UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
MAY 24 2019
CLERK, U.S. DISTRICT COURT
By _____
Deputy

Lisa A. Biron, )
    Plaintiff )
)
)
v. ) Civil Action No. 4:19-cv-322
)
)
FMC Carswell Warden Jody Upton, )
et al., )
    Defendants )

### Plaintiff's Opposition to Defendants' Motion to Dismiss

On or about April 29, 2019, Defendants filed a Motion to Dismiss. On May 15, 2019[1] Ms. Biron filed her First Verified Amended Complaint. Defendants have argued, <u>inter alia</u>, that Ms. Biron's claims for money damages are not cognizable, and, alternatively, that the Defendants are entitled to qualified immunity.

In this Opposition, Ms. Biron will address the Defendants' claims that money damages are unavailable. More specifically, she will argue that this Court should allow her claims for damages under <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971) as there are no special factors counselling hesitation, and Congress has not acted to foreclose Bivens-claims for federal inmates. In addition, she will proffer that the Religious Freedom Reformation Act ("RFRA") authorizes individual capacity suits against federal officials for money damages. She will reserve her discussion on qualified immunity until Defendants respond to her amended complaint.

---

[1] An inmate's pleading/motion is deemed filed when delivered to prison authorities for mailing. <u>Houston v. Lack</u>, 487 U.S. 266, 270-71 (1988).

### A Bivens Remedy Is Available

"The purpose of Bivens is to deter federal officers from committing constitutional violations." Butts v. Martin, 877 F.3d 571, 587 (5th Cir. 2017). quoting Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 66 (2001). Bivens implied a damages remedy against federal agents for violations of the Fourth Amendment prohibition against unreasonable searches and seizures. See Butts, 877 f.3d at 587, citing Bivens, 403 U.S. at 397. A Bivens remedy, however, is not available for all constitutional violations and its expansion is "a disfavored judicial activity." Butts, 877 F.3d at 587, quoting Ziglar v. Abbasi, 137 S. Ct. 1843, 1857 (2017).

Bivens has been extended beyond the deprivation of Fourth Amendment rights by the Supreme Court on two occasions: for violations of the Fifth Amendment Due Process Clause for sex discrimination of a federal employee by her congressman-employer, see Davis v. Passman, 442 U.S. 228 (1979), and for violations of the Eighth Amendment for prison officials' failure to treat an inmate's asthma. See Carlson v. Green, 446 U.S. 228 (1980).

To determine whether a Bivens remedy is available to Ms. Biron, the "Court[] must first assess whether [her] claim[s] present[] a new Bivens context." Butts, 877 F.3d at 587, citing Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009). "If so, there are two circumstances where Bivens does not recognize an implied cause of action for constitutional violations. First, Bivens claims are unavailable 'if there are special factors counselling hesitation in the absence of affirmative action by Congress.'" Butts, 877 F.3d at 587, quoting Abbasi, 137 S. Ct. at 1857 (internal citation omitted). "Second, Bivens remedies may be foreclosed by congressional action where an 'alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" Butts, 877 F.3d

2

at 587, quoting Wilkie v. Robbins, 551 U.S. 537, 550 (2007). The Fifth Circuit has "recognized that 'a Bivens action is analogous to an action under § 1983—the only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials'." Butts, 877 F.3d at 588, quoting Evans v. Ball, 168 F.3d 856, 863 n.10 (5th Cir. 1999), abrogated on other grounds by Castellano v. Fragozo, 352 F.3d 939 (5th Cir. 2003). The Fifth Circuit "does not distinguish between Bivens claims and § 1983 claims." Butts, 877 F.3d at 588 (internal quotations omitted).

### New Context

Ms. Biron acknowledges that her claims present a new context as they are meaningfully different than any previous Bivens cases decided by the Supreme Court. See Abbasi, 137 S. Ct. at 1859. The Supreme Court has never recognized a First Amendment Bivens claim, see Bush v. Lucas, 462 U.S. 367 (1983)(declining to extend Bivens to First Amendment retaliation claim against a federal employer because Congress provided a comprehensive remedial scheme); Wood v. Moss, 134 S. Ct. 2056 (2014)(assuming but not deciding that Bivens extends to First Amendment claim); Iqbal, 556 U.S. 662 (same); but see Vegas v. United States, 881 F.3d 1146 (9th Cir. 2018) (noting that Ninth Circuit allows a Bivens-type action directly under the First Amendment); Bistrain v. Levi, 696 F.3d 352, 376 n.9 (3d Cir. 2012) ("Our Court, however, relying on Bivens, has held that a federal cause of action for damages may be implied directly from the [F]irst [A]mendment."); and, as stated supra, its Fifth Amendment Bivens case arose in a federal employment sex discrimination case, see Davis, 442 U.S. 228, which bears no resemblance to Ms. Biron's case.

3

While Ms. Biron's claims present a new context for Bivens, there are no special factors to prevent extending an implied cause of action to her claims.

Special Factors/Alternate Remedies

In the present case, there are no special factors counselling hesitation in the absence of affirmative action by Congress. See Butts, 877 F.3d at 587. Ms. Biron's case is a mine-run case concerning the violation of prisoner civil rights by federal prison officials. It bears no resemblance to any cases that have refused to extend Bivens under a special factors analysis.

In Abbasi, illegal aliens, detained for investigation in the wake of the September 11 terrorist attacks, brought various constitutional claims and challenges to the detention policy against three high-level executive officers in the Department of Justice and two Wardens of MDC Brooklyn. 137 S. Ct. at 1860.

In analysing whether to extend Bivens to this new context, the Supreme Court "noted that a Bivens action is 'not a proper vehicle for altering an entity's policy'." Id. Even if the action were confined to an individual policy maker (i.e., a particular executive officer), the claims would require an examination into the confidential or sensitive discussions and deliberations that led to the policies and governmental acts being challenged. Id. The Court noted that this might impede the Executive Branch from performance of its constitutional duties. Id. at 1860-61. Further, the Court noted that the detention policies at issue involved "more than standard law enforcement operations" and challenged "major elements of the Government's whole response to the September 11 attacks"

which involve matters of national security. Id. at 1861.

The Court concluded that, in regard to the challenges to the detention policy, these special factors counselled that "whether a damages action should be allowed is a decision for the Congress to make not the courts." Id. at 1860. Interestingly, the Court remanded the case for the Second Circuit to conduct in the first instance a special factors analysis in regard to the Fifth Amendment prisoner abuse claims against the two Wardens. Id. at 1865.

Similarly, the Supreme Court remanded Hernandez v. Mesa, 137 S. Ct. 2003 (2017) to the Fifth Circuit to determine whether a Bivens remedy was available. The plaintiffs claimed that United States Customs and Border Patrol Agent Mesa violated the Fourth and Fifth Amendments by shooting across the international border into Mexico and killing an unarmed 15 year-old Mexican boy. Hernandez v. Mesa, 885 F.3d 811, 814-15 (5th Cir. 2018)(en banc).

Finding the claims presented a new context, the Circuit Court conducted a special factors analysis and found several of them. First, it found that this potential extension of Bivens "threaten[ed] the political branches' supervision of national security." Id. at 818. It noted "the Supreme Court has never implied a Bivens remedy in a case involving the military, national security, or intelligence." Id. at 818-19, quoting Doe v. Rumsfeld, 683 F.3d 390, 394 (D.C. Cir. 2012); see Abbasi, 137 S. Ct. at 1861 ("National security is the prerogative of the Congress and the President."). The threat of Bivens liability, it noted, "could undermine the Border Patrol's ability to perform duties essential to national security." Id. at 819; see also Vanderklok v. United States, 868 F.3d 189, 207-09 (3d Cir. 2017)(denying Bivens remedy in the context of airport

5

security against TSA agent for alleged constitutional violations). The Court noted that allowing a Bivens claim in this context risked interference with foreign affairs and diplomacy. Id. at 819.

In the present case, Ms. Biron's claims do not involve any of the "special factors" set forth above. She does not seek to challenge an FBOP policy like the plaintiffs in Abbasi, nor is she suing high-level Executive Branch decision-makers. Her claims, likewise, do not involve matters of national security or foreign affairs and diplomacy.

Moreover, a Bivens remedy is not foreclosed by Congress because there is no "alternative, existing process for protecting [Ms. Biron's interest that] amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." See Butts, 877 F.3d at 587.

Presently, the only Supreme Court holdings to deny Bivens remedies to ordinary federal inmates are easily distinguishable from Ms. Biron's circumstances.

In Malesko, the Supreme Court declined to allow a claim for damages under Bivens brought by a federal inmate against a private corporation operating as a halfway house under contract with the FBOP. 534 U.S 61. The Court noted that the question of whether a Bivens remedy might lie against a private individual was not presented, and that the purpose of Bivens is to deter individuals. Id. at 70. Therefore, if a Bivens action were allowed against a corporate defendant "[t]he deterrent effects of the Bivens remedy would be lost." Id. at 70-71. The Court stated

> There is no reason for us to consider extending Bivens beyond its core premise here. To begin with, no federal prisoners enjoy respondent's contemplated remedy. <u>If a federal prisoner in a BOP facility alleges a constitutional</u>

6

> <u>deprivation, he may bring a Bivens claim</u>
> <u>against the offending individual officer</u> . . . .[2]
> The prisoner may not bring a <u>Bivens</u> claim
> against the officer's employer, the United States,
> or the BOP.

Id. at 71-72 (emphasis added).

In <u>Minneci v. Pollard</u>, 565 U.S. 118 (2012), a federal inmate brought an action against prison employees in a privately operated federal prison alleging the deprivation of adequate medical care. The Supreme Court held that there was no <u>Bivens</u> implied cause of action under the Eighth Amendment because of existing state law remedies. Id. at 124. The Court explained that

> [The inmate's] Eighth Amendment claim focuses
> on a kind of conduct that typically falls within
> the scope of traditional state tort law. And
> in the case of a privately employed defendant,
> state tort law provides an "alternate, existing
> process" capable of protecting the constitution-
> al interests at stake.

Id. at 125, quoting <u>Wilkie</u>, 551 U.S. at 550; see also <u>Vegas</u>, 881 F.3d 1146 (no <u>Bivens</u> remedy against private non-profit residential reentry center because of adequate state law claims).

<u>Malesko</u> and <u>Minneci</u> are easily distinguished from Ms. Biron's case. Ms. Biron is not suing the United States, the FBOP, private actors, or a private corporation. Her <u>Bivens</u> claims are against individual FBOP officials for constitutional violations. Further, the Supreme Court itself has stated that a <u>Bivens</u> claim would lie in her situtation. See supra n.1.

---

[2] It bears noting (and repeating) that, although this language might be considered dicta, the Supreme Court stated, "[A] federal prisoner in a BOP facility . . . may bring a <u>Bivens</u> claim against the offending individual officer." <u>Malesko</u>, 534 U.S. at 72.

7

Ms. Biron acknowledges the trend occurring in the various district courts denying the extension of Bivens claims to federal inmates because of the "alternate remedies" that are available. In Akande v. Philips, no. 1:17-CV-01243 EAW, 2018 U.S. Dist. LEXIS 118212 (W.D.N.Y. July 11, 2018), the court, declining to decide whether a Bivens claim was available at the PLRA-screening stage, nevertheless discussed and collected cases which have denied Bivens First Amendment relief because the inmate-plaintiff had alternative remedies including the FBOP administrative grievance process, a federal tort claims action, the filing of habeas corpus, or injunctive relief. Ms. Biron posits that this analysis is deeply flawed and that none of these remedies foreclose an action under Bivens.

As stated, "Bivens remedies may be foreclosed by Congressional action where an 'alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages'." Butts, 877 F.3d at 587, quoting Wilkie, 551 U.S. at 550 (emphasis added).

In Malesko, the Supreme Court stated that it "inferred a [Bivens] right of action against individual prison officials where the plaintiff's only alternative was a Federal Tort Claims Act ("FTCA") claim against the United States." 534 U.S. at 67-68, quoting Carlson, 446 U.S. at 18-23. "We also found it 'crystal clear' that Congress intended the FTCA and Bivens to serve as 'parallel' and 'complementary' sources of liability." Id. Clearly, the availability of a FTCA claim does not foreclose a Bivens remedy.

Similarly, in Malesko, the Court explained that "the purpose of Bivens is to deter individual federal officers from committing constitutional violations." 534 U.S. at 70. The Court "made clear that the threat

8

of litigation and liability will adequately deter federal officers . . . . Id., quoting FDIC v. Myers, 510 U.S. 471, 474 (1994). Given the Supreme Court's clear explanation of the purpose of the Bivens doctrine, it does not follow that a claim for injunctive relief is the type of "alternative remedy" envisioned by the Court. This is especially true in light of the FBOP's questionable practice of transferring an inmate-plaintiff against her will to a new location after a law suit is filed or upon learning that filing is imminent.

Likewise, habeas corpus is not an alternate remedy to bar a Bivens claim. It is well settled that a habeas petition is not an appropriate means to attack unconstitutional conditions of confinement and prison procedures, but is the means to seek relief from custody. See Carson v. Johnson, 112 F.3d 818, 820-21 (5th Cir. 1997). Certainly Ms. Biron's claims in the present case are not challengeable in a habeas petition.

Incredibly, as stated above, several district courts have opined that the FBOP administrative remedy process is an alternative remedy to bar extending Bivens relief to an inmate. See Akande, 2018 U.S. Dist. LEXIS 118212 (collecting cases). But, as the Supreme Court held, it is Congressional action in the form of an existing remedy (or even the lack of a remedy when Congress has enacted legislation in an area but has explicitly or implicitly not provided a damages remedy) that counsels hesitation in implying a Bivens remedy. See Abbasi, 137 S. Ct. at 1857; Wilkie, 551 U.S. at 550; Butts, 877 F.3d at 587; see also De La Paz v. Coy, 786 F.3d 367, 375 (5th Cir. 2015). Congress did not enact the FBOP administrative remedy process.

Generally, when the Supreme Court or an appellate court has declined to extend Bivens, it has identified Congressional actions that have coun-

9

selled hesitation. In Lucas, the Court held that administrative review mechanisms crafted by Congress provided meaningful redress for First Amendment retaliation claims against an employer (NASA), and, therefore, foreclosed the need to fashion a new, judicially crafted cause of action. 462 U.S. at 378. In Wilkie, the Court held that Bivens action against officials of the Bureau of Land Management was barred by Congress-enacted administrative review process and ultimate judicial review. 551 U.S. 537.

Similarly, the First Circuit barred a Bivens remedy in a federal employment discrimination case because Title VII and the Civil Service Reform Act provided a comprehensive system for reviewing personnel actions against federal employers which included any actions taken in violation of the employee's constitutional rights. Gonzalez v. Velez, 864 F.3d 45 (1st Cir. 2017). In Doe v. Hagenbeck, 870 F.3d 36 (2d Cir. 2017), a female cadet filed claims against West Point employees for discrimination. The court denied a Bivens remedy because Congress is the authorized source of authority over the military and has not provided a damages remedy. The Ninth Circuit denied Bivens relief where a plaintiff sued over an illegal FBI wiretap. The court determined that the Wiretap Act provided for damages and is an adequate alternate remedy for the plaintiff's alleged harm. See Brunoehler v. Tarwater, no. 16-56634, 2018 U.S. App. LEXIS 20064 (9th Cir. July 19, 2018)(unpublished); see also Liff v. Office of the Inspector Gen. for the United States DOL, 881 F.3d 912 (D.C. Cir. 2018) (no Bivens remedy for injury to business' reputation because Congress provided significant remedies for disputes between contractors and the government). In light of these decisions, it is clear that there is no alternate remedy that would bar extending Bivens to Ms. Biron's claims.

Moreover, Congress clearly did not intend for the FBOP grievance process to bar judicial action. In relevant part, the Prison Litigation Reform Act ("PLRA") (42 U.S.C. § 1997e(a)) directs that "No action shall be brought with respect to prison conditions ... by a prisoner ... until such administrative remedies as are available are exhausted." Obviously, Congress did not intend for the FBOP administrative remedy to be an alternate remedy barring damages when the PLRA explicity states that administrative remedy exhaustion is a prerequisite to filing a law suit.

When Congress enacted the PLRA in 1995, it was well aware that the district courts had been implying damages remedies in inmate law suits against federal officials. Indeed, federal courts had been doing so since Bivens was decided in 1971. If Congress had disapproved of the "implied Bivens remedy" it could easily have divested the courts of jurisdiction while legislating in this area. It did not, and by implication put its stamp of approval on this implied damages remedy in federal inmate lawsuits.

## RFRA Authorizes Individual Capacity Suits Against Federal Officials For Money Damages

The judicial relief provision of the Religious Freedom Restoration Act ("RFRA") provides that "A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim ... and obtain appropriate relief against a government." 42 U.S.C. § 2000bb-1. "The term 'government' includes a[n] ... official (or other person acting under color of law) of the United States ...." § 2000bb-2.

Accordingly, the Circuit Courts that have considered the matter have concluded that "RFRA authorizes individual capacity suits against federal

11

officials for money damages." Tanvir v. Tanzin, 894 F.3d 449, 446 (2d Cir. 2018); see also Mack v. Loretto, 839 F.3d 286, 304, no. 14-2738, 2016 U.S. App. 18336 (3d Cir. 2016) (concluding that "federal officials who violate RFRA may be sued in their individual capacity for damages"). Further, concurring in the denial for re-hearing Tanvir en banc, Chief Judge Katzmann and Circuit Judge Pooler of the Second Circuit emphasized that the Panel was not implying a private right of action because "RFRA contains an express private right of action with an express provision for 'appropriate relief.'" Tanvir v. Tanzin, no. 16-1176, 2019 U.S. App. LEXIS 4519, *2-3 (2d Cir. Feb. 14, 2019) (concurrence); see 42 U.S.C. § 2000bb-1(c). They explained that "[t]he Panel opinion interprets RFRA's express private right of action to support a damages remedy where appropriate—a conclusion based on principles of statutory interpretation that Bivens and its progeny do not touch." Tanvir, 2019 U.S. App. LEXIS at *3.

The Fifth Circuit's determination that the Religious Land Use and Institutionalized Persons Act ("RLUIPA") does not authorize damages against state officials in their individual capacity is of no moment in analysing RFRA's remedies. The Third Circuit has held that RLUIPA does not provide for damages against state officials in their individual capacity, but that RFRA does provide for damages against federal officials in their individual capacity. It explained:

> Although the judicial relief provision in RLUIPA
> mirrors that in RFRA, RLUIPA was enacted pursuant
> to Congress's powers under the Spending Clause,
> thereby allowing Congress to impose certain cond-
> itions, such as civil liability, on the recipients
> of federal funds, such as state prison institutions.
> Because state officials are not direct recipients
> of the federal funds, and thus would have no notice

12

> of the conditions imposed on them, they cannot be held individually liable under RLUIPA. RFRA, by contrast, was enacted pursuant to Congress's powers under the Necessary and Proper Clause and thus does not implicate the same concerns.

Mack, 839 F.3d at 303-04.

Defendants argue that allowing money damages under RFRA "would be to greatly expand, rather than merely 'restore,' the remedies available prior to [Employment Division v.] Smith[, 494 U.S. 872 (1990)]," (see Defts. Mot. to Dis., 15), and that this "expansion" is impermissible. In Mack, the Third Circuit criticized this same reasoning noting that it was "unmoved by the conclusion of one district court[3] that RFRA does not provide for damages against individual officers because that form of relief was unavailable under the Supreme Court jurisprudence that RFRA sought to restore." Mack, 839 F.3d at 304 n.101. It pointed out that the Supreme Court itself has stated, that "RFRA provides 'even broader protection for religious liberty that was available' previously." Id. quoting Burwell v. Hobby Lobby Stores, Inc., 134 S. Ct. 2751, 2761 n.3 (2014).

For the foregoing reasons, this Court should allow Ms. Biron's claims for money damages against the individual federal officials to proceed.

---

3 The conclusion criticized was that of the Southern District of New York in Tanvir v. Lynch, 128 F. Supp. 3d 756, 777-78 (S.D.N.Y. 2015). Unsurprisingly, the Second Circuit reversed on appeal in Tanvir v. Tanzin, 894 F.3d 449 (2d Cir. 2018).

Respectfully submitted

5/17/19
Date

*Lisa Biron*
Lisa Biron (12775-049)
FCI Waseca
P.O. Box 1731
Waseca, MN 56093

## Certification

I hereby certify that a copy of this Opposition was mailed to AUSA Brian Stoltz, firstclass postage prepaid on this date.

5/17/19
Date

*Lisa Biron*
Lisa Biron

## Declaration of Timely Filing

I hereby swear, under penalty of perjury, that this Opposition was mailed to this Court by depositing said document firstclass postage prepaid into the inmate legal mail system on this date, and is, thus, considered filed under the "Prison Mailbox Rule" on this date.

5/17/19
Date

*Lisa Biron*
Lisa Biron

14

Lisa Biron # 12775-049
Federal Correctional Institution
P.O. Box 1731
Waseca, MN 56093

Mailed 5/17/2019

CLERK OF DISTRICT COURT
NORTHERN DIST OF TX
RECEIVED

2019 MAY 24 PM 1:04

DEPUTY CLERK_____

MAY 17 2019

⇔12775-049⇔
Us District Court
Clerk of Court
501 W 10TH ST
Room 310
FORT Worth, TX 76102
United States



Federal Correctional Institution
P.O. Box 1731
Waseca, MN 56093-0741

MAY 17 2019