# ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUN - 3 2019

CLERK U.S. DISTRICT COURT
By _____
       Deputy

LISA BIRON,

    Plaintiff,

v.                                                      Civil Action No. 4:19-CV-322-A

FEDERAL MEDICAL CENTER ("FMC")
CARSWELL WARDEN JODY UPTON;
FMC CARSWELL PSYCHOLOGIST
LETICIA A. ARMSTRONG; FMC
CARSWELL PSYCHOLOGIST E. DIXON,

    Defendants.

## DEFENDANTS' MOTION TO DISMISS
## PLAINTIFF'S FIRST AMENDED COMPLAINT

ERIN NEALY COX
United States Attorney

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8626
Facsimile:   214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants

# Table of Contents

I.      Introduction ............................................................................................. 1

II.     Background .............................................................................................. 2

III.    Legal Standards ....................................................................................... 4

        A.      Rule 12(b)(1). ............................................................................. 4

        B.      Rule 12(b)(6). ............................................................................. 5

        C.      Qualified immunity. .................................................................... 5

IV.     Argument and Authorities ....................................................................... 5

        A.      Biron's claims for money damages (1) are not cognizable and,
                in any event, (2) fail to overcome the personal-capacity defendants'
                qualified immunity. ..................................................................... 6

                1.      No damages claim is available to Biron. ......................... 6

                        a.      No *Bivens* remedy should be implied because Biron's
                                claims arise in a new context and special factors
                                counsel against expanding *Bivens* here.................... 6

                        b.      No claim for money damages is available under RFRA
                                or the Administrative Procedure Act. .................... 12

                2.      Even if a damages remedy were theoretically available,
                        the personal-capacity defendants are entitled to
                        qualified immunity......................................................... 15

                        a.      No clearly established law supports Biron's claims. ............ 16

                        b.      Biron fails to allege any violation of a constitutional or
                                statutory right, and her claims for damages are also
                                barred by the Prison Litigation Reform Act. ........................ 18

        B.      Biron cannot establish jurisdiction for her official-capacity claims
                for declaratory and injunctive relief............................................... 23

V.      Conclusion............................................................................................. 25

# Table of Authorities

## Cases

*Ajaj v. United States,*
　No. 15-CV-992, 2016 WL 6212518 (D. Colo. Oct. 25, 2016) ............................. 14

*Alexander v. Tippah Cnty.,*
　351 F.3d 626 (5th Cir. 2003)......................................................................... 22

*Andrews v. Miner,*
　301 F. Supp. 3d 1128 (N.D. Ala. 2017) ...................................................... 9

*Ashcroft v. al-Kidd,*
　563 U.S. 731 (2011) ............................................................................... 5, 16

*Ashcroft v. Iqbal,*
　556 U.S. 662 (2009)...................................................................................... 5

*Bell v. Wolfish,*
　441 U.S. 520 (1979) .................................................................................... 11

*Bell Atl. Corp. v. Twombly,*
　550 U.S. 544 (2007)...................................................................................... 5

*Biron v. Upton,*
　737 F. App'x 713 (5th Cir. 2018) ............................................................... 3

*Biron v. United States,*
　No. 16-CV-108-PB, 2017 WL 4402394 (D.N.H. Oct. 2, 2017) ..................... 2

*Bistrian v. Levi,*
　912 F.3d 79 (3d Cir. 2018)......................................................................... 12

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
　403 U.S. 388 (1971) ..................................................................................... 1

*Bloch v. Samuels,*
　No. H-04-4861, 2006 WL 2239016 (S.D. Tex. Aug. 3, 2006) ................. 13, 23

*BMW of N. Amer. Inc. v. Gore,*
　517 U.S. 559 (1996) ................................................................................... 23

*Briggs v. Mississippi,*
　331 F.3d 499 (5th Cir. 2003)...................................................................... 21

*Brosseau v. Haugen,*
    543 U.S. 194 (2004) ................................................................................ 16

*Buenrostro v. Fajardo,*
    No. 1:14-CV-75, 2017 WL 6033469 (E.D. Cal. Dec. 5, 2017) ............................... 9

*Bush v. Lucas,*
    462 U.S. 367 (1983) .................................................................................. 9

*Bustillos v. El Paso Cnty. Hosp. Dist.,*
    891 F.3d 214 (5th Cir. 2018) ..................................................................... 17

*Butts v. Martin,*
    877 F.3d 571 (5th Cir. 2017) ..................................................................... 18

*Cain v. Virginia,*
    982 F. Supp. 1132 (E.D. Va. 1997) ............................................................. 22

*Carlson v. Green,*
    446 U.S. 14 (1980) ............................................................................. 7, 10

*City & Cnty. of San Francisco v. Sheehan,*
    135 S. Ct. 1765 (2015) ............................................................................ 17

*Collier v. Montgomery,*
    569 F.3d 214 (5th Cir. 2009) ..................................................................... 15

*Comer v. Scott,*
    610 F.3d 929 (5th Cir. 2010) ..................................................................... 21

*Copeland v. Livingston,*
    464 F. App'x 326 (5th Cir. 2012) ............................................................... 14

*Davis v. Passman,*
    442 U.S. 228 (1979) .................................................................................. 7

*Delorenzo v. HP Enter. Servs., LLC,*
    No. 8:14-CV-1070, 2014 WL 5590905 (M.D. Fla. Nov. 3, 2014) ........................ 25

*Edwards v. Johnson,*
    209 F.3d 772 (5th Cir. 2000) ..................................................................... 25

*Edwards v. Pentangelo,*
    No. 10-C-5722, 2012 WL 138598 (N.D. Ill. Jan. 18, 2012) ............................... 20

*Employment Division v. Smith,*
    494 U.S. 872 (1990) ............................................................................................. 12

*Figueroa v. Wright,*
    No. 9:07-CV-1223, 2009 WL 674262 (N.D.N.Y. Mar. 11, 2009) ...................... 22

*Francis v. ENI Exploration Program 1980-II,*
    No. 84-0005-CV, 1984 WL 817 (W.D. Mo. May 25, 1984) ................................ 25

*Garcia v. Kerry,*
    557 F. App'x 304 (5th Cir. 2014) ......................................................................... 2

*Geiger v. Jowers,*
    404 F.3d 371 (5th Cir. 2005)......................................................................... 19, 22

*Gonzalez v. Hasty,*
    269 F. Supp. 3d 45 (E.D.N.Y. 2017) ................................................................ 9, 12

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982) ............................................................................................... 5

*Heck v. Humphrey,*
    512 U.S. 477 (1994) .......................................................................................... 2, 20

*Hernandez v. Mesa,*
    885 F.3d 811 (5th Cir. 2018) (en banc)................................................................ 12

*Holt v. Hobbs,*
    135 S. Ct. 853 (2015) ........................................................................................... 19

*Home Builders Ass'n of Miss. v. City of Madison,*
    143 F.3d 1006 (5th Cir. 1998)................................................................................ 4

*Howard v. Lackey,*
    No. 7:16-CV-129, 2018 WL 1157547 (E.D. Ky. Mar. 5, 2018)............................ 9

*Insight for Living Ministries v. Burwell,*
    No. 4:14-CV-675, 2014 WL 6706921 (E.D. Tex. Nov. 25, 2014) ...................... 13

*Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund,*
    500 U.S. 72 (1991) ............................................................................................... 24

*King v. U.S. Dep't of Veterans Affairs,*
    728 F.3d 410 (5th Cir. 2013)................................................................................ 15

*Kovacic v. Villarreal*,
    628 F.3d 209 (5th Cir. 2010)................................................................. 5

*Lane v. Pena*,
    518 U.S. 187 (1996) ......................................................................... 24

*Lemon v. Kurtzman*,
    403 U.S. 602 (1971) ......................................................................... 20

*Lopez v. Sentrillon Corp.*,
    749 F.3d 347 (5th Cir. 2014)................................................... 23–24, 24

*Mack v. Warden Loretto FCI*,
    839 F.3d 286 (3d Cir. 2016)............................................................... 14

*McChesney v. Hogan*,
    No. 9:08-CV-1186, 2009 WL 607398 (N.D.N.Y. Dec. 23, 2008) ........................ 21

*Mercer v. Matevousian*,
    No. 1:18-CV-265, 2018 WL 3917969 (E.D. Cal. Aug. 14, 2018)........................ 12

*Morgan v. FBI*,
    No. A-16-CV-1290-LY, 2017 WL 1322251 (W.D. Tex. Apr. 10, 2017)............. 24

*Morgan v. Swanson*,
    659 F.3d 359 (5th Cir. 2011) (en banc)................................................. 15

*Morrow v. Meachum*,
    917 F.3d 870 (5th Cir. 2019)......................................................... 16, 17

*Muhammad v. Gehrke*,
    No. 2:15-CV-334, 2018 WL 1334936 (S.D. Ind. Mar. 15, 2018) ......................... 9

*Mullenix v. Luna*,
    136 S. Ct. 305 (2015) ....................................................................... 16

*Pavlov v. Parsons*,
    574 F. Supp. 393 (S.D. Tex. 1983) ...................................................... 25

*Pearson v. Callahan*,
    555 U.S. 223 (2009) ......................................................................... 16

*Pearson v. Holder*,
    No. 3:09-CV-682-O, 2011 WL 13185719 (N.D. Tex. Apr. 29, 2011) ................. 20

*Pembroke v. Wood Cnty.*,
   981 F.2d 225 (5th Cir. 1993)................................................................. 25

*Ramming v. United States*,
   281 F.3d 158 (5th Cir. 2001)................................................................. 5

*Savickas v. Walker*,
   180 F. App'x 592 (7th Cir. 2006) ......................................................... 20

*Sherbert v. Verner*,
   374 U.S. 398 (1963) .............................................................................. 13

*Siglar v. Hightower*,
   112 F.3d 191 (5th Cir. 1997)................................................................. 22

*Spencer v. New Orleans Levee Bd.*,
   737 F.2d 435 (5th Cir. 1984)................................................................. 24

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
   538 U.S. 408 (2003) .............................................................................. 23

*Tamfu v. Ashcroft*,
   54 F. App'x 408 (5th Cir. 2002) ........................................................... 25

*Vanderklok v. United States*,
   868 F.3d 189 (3d Cir. 2017).................................................................. 11

*Vann v. City of Southaven*,
   884 F.3d 307 (5th Cir. 2018)................................................................. 16

*Vega v. United States*,
   881 F.3d 1146 (9th Cir. 2018)............................................................... 9

*Verners v. McClure*,
   No. 5:14-CV-92, 2015 WL 2374412 (E.D. Tex. May 15, 2015)............ 14

*Wisconsin v. Yoder*,
   406 U.S. 205 (1972) .............................................................................. 13

*Wooley v. City of Baton Rouge*,
   211 F.3d 913 (5th Cir. 2000)................................................................. 16

*Wyatt v. Fletcher*,
   718 F.3d 496 (5th Cir. 2013)................................................................. 16

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017) ............................................................. 6, 7, 8, 9, 10, 11, 15

## Statutes, Rules, and Other Authorities

5 U.S.C. § 702 .................................................................................................... 15

18 U.S.C. § 1964(c) ............................................................................................ 14

18 U.S.C. § 4001(b) ........................................................................................... 11

18 U.S.C. § 4042(a) ........................................................................................... 11

28 C.F.R. §§ 542.10–.19 ...................................................................................... 9

28 U.S.C. § 2410(a) ........................................................................................... 24

42 U.S.C. § 1983 ................................................................................................ 14

42 U.S.C. § 1997e .............................................................................................. 10

42 U.S.C. § 1997e(e) .......................................................................................... 22

42 U.S.C. §§ 2000bb *et seq.* ................................................................................. 1

42 U.S.C. § 2000bb(a)(4) ................................................................................... 13

42 U.S.C. § 2000bb(a)(5) ................................................................................... 13

42 U.S.C. § 2000bb-1(c) .................................................................................... 13

42 U.S.C. § 2000bb-2(4) .................................................................................... 19

47 U.S.C. § 605(e)(3) ......................................................................................... 14

50 U.S.C. § 1810 ................................................................................................ 14

Fed. R. Civ. P. 12(b)(1) .................................................................................... 2, 4

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 2

Fed. R. Evid. 201 ................................................................................................. 2

H.R. Rep. 103-88 (1993) ................................................................................... 14

S. Rep. No. 103-111 (1993) ............................................................................. 14

.

## I.    Introduction

This case filed by federal inmate Lisa Biron arises out of the confiscation by prison officials of a 144-page manuscript written by Biron in prison.  Claiming that the manuscript was the product of "Biblical study and research on the Christian view of morality regarding sexual conduct," Biron—who was convicted of a number of sex offenses—asserted in her original complaint that prison officials violated her rights by confiscating the manuscript.  (Doc.[1] 1-5.)  Biron sought money damages from two of the defendants in their personal capacities under *Bivens*[2] and a federal statute, the Religious Freedom Restoration Act (RFRA),[3] and also sought declaratory and injunctive relief against all three defendants in their official capacities.

The defendants moved to dismiss Biron's complaint after removing the case to this Court.  (Doc. 11.)  Biron subsequently filed an amended complaint.  (Doc. 15.)  In the amended complaint, Biron continues to assert claims relating to her manuscript but has also added an allegation that the defendants impermissibly "acted to force treatment and behavioral change" upon her through "secular" sex-offender treatment.  (Doc. 15, ¶ 8.)  As in the original complaint, Biron seeks relief against two of the defendants in their personal capacities, and against all three defendants in their official capacities.

The defendants now move to dismiss Biron's amended complaint.  As explained below, the personal-capacity damages claims should be dismissed because:  (1) Biron

---

[1] "Doc. __" citations refer by number to the items on the docket in this action.

[2] *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[3] *See* 42 U.S.C. §§ 2000bb *et seq.*

**Defendants' Motion to Dismiss Plaintiff's First Amended Complaint – Page 1**

cannot show that a *Bivens* remedy is available, nor can she show that a claim for money damages is authorized by RFRA or any other source of law; and (2) even if such claims were possible, the defendants are entitled to qualified immunity because Biron's allegations fail to show any violation of clearly established law, fail to state a claim for relief generally, and, with respect to Biron's challenge to her participation in sex-offender treatment, are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

Biron's official-capacity claims—which are considered claims against the government itself—should likewise be dismissed. Biron's claims relating to the manuscript were originally filed in state court, so the doctrine of derivative jurisdiction applies and mandates dismissal because Congress has never expressly consented to suit in state court on claims of this type. In addition, no jurisdiction exists for any new claim about sex-offender treatment, because Biron is no longer housed at FMC Carswell.

For these reasons, and as discussed in more detail below, this case should be dismissed under Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

## II.    Background

Biron was previously convicted of a number of federal sex offenses, including sexual exploitation of a child, transportation of a minor with intent to engage in criminal sexual activity, and possession of child pornography. *See United States v. Biron*, No. 12-CR-140-01-PB (D.N.H.) (judgment entered May 28, 2013).[4] The victim of these crimes

---

[4] The defendants request that the Court take judicial notice of the adjudicative facts of Biron's other court cases, including her criminal conviction. *See* Fed. R. Evid. 201; *Garcia v. Kerry*, 557 F. App'x 304, 309 (5th Cir. 2014). Information about Biron's criminal case is available at *Biron v. United States*, No. 16-CV-108-PB, 2017 WL 4402394, at *1–3 (D.N.H. Oct. 2, 2017), as well as on the publicly-available docket in the District of New Hampshire. *See United States v. Biron*, No. 12-CR-140-01-PB (D.N.H.).

was Biron's minor daughter, and a New Hampshire family court ordered the daughter removed from Biron's custody and directed Biron to "seek treatment" and "follow the recommendations arising out of her treatment addressing her sexually abusive behaviors." *See In re R. B.* [redacted], No. 656-2012-JV-326, at 3–4 (N.H. 9th Cir. Fam. Div.—Manchester) (order signed Dec. 4, 2012); *see also Biron v. Upton*, 737 F. App'x 713, 715 (5th Cir. 2018) (discussing Biron's criminal convictions and the family court order).[5]  The judgment entered in Biron's criminal case likewise recommended that Biron "participate in a sex offender treatment program while incarcerated" and mandated that Biron "must participate in a specialized sex offender treatment program" as a condition of supervision. *See United States v. Biron*, No. 12-CR-140-01-PB (D.N.H.) (judgment entered May 28, 2013, at pp. 2, 4).  Biron is currently incarcerated at a federal prison in Minnesota, but was previously incarcerated at FMC Carswell in Fort Worth during the time period relevant to this suit. (*See* Doc. 15, ¶ 1.)

Biron's amended complaint explains that in September 2015, defendant Emily Dixon, an FMC Carswell staff psychologist, removed from Biron's possession a 144-page "manuscript draft" that Biron had written. (Doc. 15, ¶ 16.)  Biron's original complaint did not describe the contents of this manuscript other than to say that it "contained the documentation and information gleaned from hours of Biblical study and research on the Christian view of morality regarding sexual conduct." (Doc. 1-5, ¶ 9.)  In her amended complaint, Biron has added an explanation that the manuscript referred to

---

[5] A copy of the New Hampshire family court order is available on PACER in *Biron v. Upton*, No. 4:14-CV-823-O (N.D. Tex.) (specifically, at Doc. 19 in No. 4:14-CV-823-O, at PageID 120–26).

Biblical texts and sermons, as relevant to her "life and moral failings." (Doc. 15, ¶ 15.)

Biron states that God directed her to study this matter and record her conclusions, and

that this represented a sincerely-held religious belief on her part. (Doc. 15, ¶¶ 13–14.)

According to Biron, Dixon's act of removing the manuscript caused Biron

"extreme emotional distress" and an "upset stomach." (Doc. 15, ¶ 18.) Biron makes a

similar allegation that she again suffered an "upset stomach" when defendant Leticia

Armstrong, another FMC Carswell staff psychologist, "permanently confiscated" the

manuscript after Dixon had initially removed it. (Doc. 15, ¶ 19, 22.) The third

defendant, Jody Upton, was warden of FMC Carswell at the relevant time, and Biron

claims that he "failed to intervene to protect Ms. Biron's civil rights and religious

liberties" after she sent him an email about the situation. (Doc. 15, ¶ 23.)

Biron asserts claims against Dixon and Armstrong in their personal capacities for

compensatory and punitive damages. (Doc. 15, ¶¶ 2, 7, 29, 34.) She also asserts claims

against all three defendants—Dixon, Armstrong, and Upton—in their official capacities

for declaratory and injunctive relief. (Doc. 15, ¶¶ 6–7, 30–33.) The defendants now

move to dismiss Biron's amended complaint in its entirety. Dixon and Armstrong have

also invoked qualified immunity as to the personal-capacity claims against them.

### III.   Legal Standards

**A.   Rule 12(b)(1).**

Under Rule 12(b)(1), a case is properly dismissed when the court "lacks the

statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss. v.

City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). "The burden of

proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction."

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted).

**B.     Rule 12(b)(6).**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009).  "[A] formulaic recitation of the elements of a cause of action will not do." *Id.*

(quoting *Twombly*, 550 U.S. at 555).

**C.     Qualified immunity.**

Qualified immunity insulates a government official from civil liability when the

official's actions do not "violate clearly established statutory or constitutional rights of

which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982).  When a defendant relies on qualified immunity, the burden is on the plaintiff to

negate this defense. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010).

To overcome qualified immunity, a plaintiff must "plead[] facts showing (1) that

the official violated a statutory or constitutional right, and (2) that the right was 'clearly

established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731,

735 (2011) (quoting *Harlow*, 457 U.S. at 818).

### IV.     Argument and Authorities

Biron's amended complaint should be dismissed in its entirety.  As discussed

below, Biron's damages claims are not cognizable and fail to overcome the personal-capacity defendants' qualified immunity.  And no jurisdiction exists for her claims for declaratory and injunctive relief against the defendants in their official capacities.

**A.      Biron's claims for money damages (1) are not cognizable and, in any event, (2) fail to overcome the personal-capacity defendants' qualified immunity.**

Dismissal of the personal-capacity claims against Dixon and Armstrong is warranted for two independent reasons.  First, Biron cannot show that any claim for money damages is available.  And second, even if such claims were available, Dixon and Armstrong are entitled to qualified immunity.

**1.      No damages claim is available to Biron.**

Biron seeks damages directly under the Constitution pursuant to *Bivens* for alleged violations of the First and Fifth Amendments, as well as under two federal statutes, RFRA and the Administrative Procedure Act.[6]  As explained below, though, no damages remedy is available under either *Bivens* or these statutes.

**a.      No *Bivens* remedy should be implied because Biron's claims arise in a new context and special factors counsel against expanding *Bivens* here.**

In *Ziglar v. Abbasi*, the Supreme Court emphasized that implying a *Bivens* remedy "is now a 'disfavored' judicial activity," and that whenever a case presents a new *Bivens* context, a judicially-created damages remedy should not be recognized if any "special factors" counsel hesitation in doing so.  137 S. Ct. 1843, 1857 (2017).  "If the case is

---

[6] Biron's original complaint also referred to unspecified Texas law, but the references to Texas law appear to have been omitted from the amended complaint.

different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court, then the context is new" and courts should be cautious of recognizing any implied *Bivens* remedy. *Id.* at 1859.

Biron's claims under the First and Fifth Amendments present a new *Bivens* context because they are meaningfully different from any previous *Bivens* cases decided by the Supreme Court. In *Abbasi*, the Court explained that it has recognized *Bivens* claims in only three specific contexts:

> (1) in *Bivens* itself, for an alleged Fourth Amendment violation by federal agents in conducting a warrantless search and seizure in a home;
>
> (2) in *Davis v. Passman*, 442 U.S. 228 (1979), for a Fifth Amendment equal-protection claim based on gender discrimination by a Congressman against an employee; and
>
> (3) in *Carlson v. Green*, 446 U.S. 14 (1980), for an Eighth Amendment claim against prison officials for the fatal failure to treat a prisoner's asthma.

*Abbasi*, 137 S. Ct. at 1854–55. "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Id.* at 1855. Biron's claims are distinguishable from these three cases and thus present a new *Bivens* context. Indeed, *Carlson* is the only one of the three cases identified in *Abbasi* that had anything to do with an inmate, and it involved an alleged failure to provide medical care for asthma. *Carlson*, 446 U.S. at 16 n.1. Biron's claims, in contrast, are not brought under the Eighth Amendment as in *Carlson* for an alleged failure to provide medical care, nor are they analogous to the claims in *Passman* or *Bivens*. Significantly, the Supreme Court has never recognized a

*Bivens* remedy under the First Amendment or for a Fifth Amendment due-process violation.  Accordingly, Biron's purported *Bivens* claims arise in new context.

When a purported *Bivens* claim is asserted in a new context, *Abbasi* requires consideration of whether "special factors" counsel against inferring such a cause of action in the absence of "affirmative action by Congress." *Abbasi*, 137 S. Ct. at 1857.  As the Supreme Court clarified in *Abbasi*, this "inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857–58.  A *Bivens* remedy should not be inferred if "there are sound reasons to think Congress *might* doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong." *Id.* at 1858 (emphasis added).  Relatedly, "if there is an alternative remedial structure present in a certain case," the existence of that alternative process "alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.*  Applying these principles, Biron cannot show that a *Bivens* claim should be recognized here, especially given the special factors present.

(1)     Alternative processes are available and foreclose a *Bivens* remedy.

One key consideration against implying a *Bivens* remedy in a new context is the availability of alternative processes to address the allegedly improper actions by government officials.  For example, inmates like Biron can seek "an injunction requiring the warden to bring his prison into compliance" or can seek "some other form of equitable relief." *Abbasi*, 137 S. Ct. at 1865.  And this "existence of alternative remedies

usually precludes a court from authorizing a *Bivens* action." *Id.* Indeed, Biron has pursued such an alternative remedy, by filing official-capacity claims against the defendants for declaratory and injunctive relief.[7] (*See* Doc. 15, ¶¶ 30–33.)

The Federal Bureau of Prisons' administrative remedy program is another alternative process available to inmates like Biron. Under this program, inmates can file grievances about any aspect of their confinement, the agency must provide written responses in specified timeframes, and prisoners may appeal institution-level responses to the agency's regional and central offices. *See* 28 C.F.R. §§ 542.10–.19. Numerous courts post-*Abbasi* have recognized that the administrative remedy program is an alternative process and a special factor that forecloses expansion of the *Bivens* remedy. *See, e.g., Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018); *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 60 (E.D.N.Y. 2017); *Andrews v. Miner*, 301 F. Supp. 3d 1128, 1134 (N.D. Ala. 2017); *Muhammad v. Gehrke*, No. 2:15-CV-334, 2018 WL 1334936, at *4 (S.D. Ind. Mar. 15, 2018); *Howard v. Lackey*, No. 7:16-CV-129, 2018 WL 1157547, at *3 (E.D. Ky. Mar. 5, 2018); *Buenrostro v. Fajardo*, No. 1:14-CV-75, 2017 WL 6033469, at *3 (E.D. Cal. Dec. 5, 2017).

---

[7] The fact that the defendants contend that jurisdiction is absent for Biron's official-capacity claims in this case does not change the calculus, because it is the *availability* of the alternative remedy that is key, not whether the person is able to ultimately succeed in a particular case under that remedy. *See Andrews v. Miner*, 301 F. Supp. 3d 1128, 1134 (N.D. Ala. 2017) (rejecting expansion of *Bivens* into a new context after noting that the prisoner was able to pursue administrative remedies, "albeit unsuccessfully"); *see also Bush v. Lucas*, 462 U.S. 367, 388 (1983) (explaining that the alternative process need not provide "complete relief" to the plaintiff).

(2)      Additional special factors further counsel against *Bivens* expansion here.

In addition to the alternative processes discussed above, one of the most significant special factors, emphasized repeatedly in *Abbasi*, is the concern for separation-of-powers principles. *See Abbasi*, 137 S. Ct. at 1857 ("When a party seeks to assert an implied cause of action under the Constitution itself, . . . separation-of-powers principles are or should be central to the analysis."). *Abbasi* recognized that Congress's failure to provide a damages remedy is both "relevant" and "telling" when it has regulated extensively in a specific arena and made specific policy choices as to how complaints should be resolved. *Id.* at 1862. Here, Congress has legislated extensively with respect to prisoners' rights, and "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." *Id.* at 1865. "Some 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court." *Id.* (citing 42 U.S.C. § 1997e). "So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs." *Id.* However, the Prison Litigation Reform Act "does not provide for a standalone damages remedy against federal jailers," meaning that Congress could have extended the *Carlson* damages remedy to cases involving other types of prisoner mistreatment, but chose not to. *See id.*

Additional special factors that weigh against extending *Bivens* to the type of First and Fifth Amendment claims asserted by Biron are the system-wide costs associated with

the creation of a damages remedy absent congressional action. As *Abbasi* instructs, "the decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide." *Abbasi*, 137 S. Ct. at 1858. This includes "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself . . . ." *Id.* In the prison context, these burdens and costs are particularly high due, in part, to the sheer volume of potential litigation arising from the creation of a *Bivens* remedy—there are more than 180,000 federal inmates and over 35,000 BOP employees. *See* Fed. Bureau of Prisons, About Our Agency, https://www.bop.gov/about/agency/ (visited June 3, 2019).

Yet another special factor counseling hesitation here is the difficulty in creating a workable cause of action. *See Abbasi*, 137 S. Ct. at 1864–65 (discussing the lack of clarity as to the legal standard for a purported *Bivens* claim alleging that a warden allowed staff to abuse a pretrial detainee); *Vanderklok v. United States*, 868 F.3d 189, 209 (3d Cir. 2017) (recognizing the "inherent uncertainty surrounding" the applicable legal standard as "a factor counseling hesitation" in expanding *Bivens*). Congress and the Supreme Court have repeatedly deferred to the Attorney General and prison administrators' expertise because "the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *see also* 18 U.S.C. §§ 4001(b), 4042(a). Biron's claims relate to prison officials' attempts to manage Biron's rehabilitation as a sex offender and are matters of prison administration not subject to any clear legal standard so as to make a *Bivens* claim viable. Moreover, by not legislating a *Bivens*-type remedy in this area despite

opportunity to do so, it is clear that Congress does not intend for such a remedy to exist.

(3)    Summary of <em>Abbasi</em> analysis.

Biron's claims represent a new context and special factors counsel against

expanding *Bivens* to include them.  Accordingly, as other courts have concluded when

confronted with similar purported claims under the First and Fifth Amendments, no

*Bivens* remedy is available.  *See Bistrian v. Levi*, 912 F.3d 79, 95, 96 (3d Cir. 2018)

(rejecting a prisoner's attempt to proceed under *Bivens* on a First Amendment claim, and

explaining that "the Supreme Court has never recognized a *Bivens* remedy under the First

Amendment" and that, "nationwide, district courts seem to be in agreement that, post-

*Abbasi*, prisoners have no right to bring a *Bivens* action for violation of the First

Amendment" (cleaned up)); *Hernandez v. Mesa*, 885 F.3d 811, 817 (5th Cir. 2018) (en

banc) (rejecting a proposed Fifth Amendment *Bivens* claim that the court explained

would require the acceptance of "two novel theories"); *Gonzalez*, 269 F. Supp. 3d at 59–

63 (no *Bivens* remedy for Fifth Amendment claim); *Mercer v. Matevousian*, No. 1:18-

CV-265, 2018 WL 3917969, at \*2–3 (E.D. Cal. Aug. 14, 2018) (same).

### b.    No claim for money damages is available under RFRA or the Administrative Procedure Act.

Biron likewise cannot show that RFRA or the Administrative Procedure Act

authorizes a claim for money damages against federal officials in their personal

capacities.  Congress enacted RFRA in an attempt to statutorily reverse the Supreme

Court's decision in *Employment Division v. Smith*, 494 U.S. 872 (1990).  In Congress's

view, *Smith* had improperly narrowed the First Amendment's protection of the free

exercise of religion. *See* 42 U.S.C. § 2000bb(a)(4). Congress instead favored the "compelling interest test" that had prevailed prior to *Smith*, as set forth in cases like *Sherbert v. Verner*, 374 U.S. 398 (1963), and *Wisconsin v. Yoder*, 406 U.S. 205 (1972). *See id.* § 2000bb(a)(5). Finding that these cases established a "workable test for striking sensible balances between religious liberty and competing prior governmental interests," Congress enacted RFRA in an attempt to restore the *Sherbert/Yoder* doctrinal standard—hence the title Religious Freedom *Restoration* Act—and created a private right of action whereby a person can obtain "appropriate relief against a government" for a RFRA violation. *See id.* §§ 2000bb(a)(5), (b), 2000bb-1(c).

There is no dispute that RFRA's provision for "appropriate relief against a government" in 42 U.S.C. § 2000bb-1(c) authorizes plaintiffs to seek declaratory or injunctive relief for claimed RFRA violations (in an appropriate suit[8]). *See, e.g.*, *Insight for Living Ministries v. Burwell*, No. 4:14-CV-675, 2014 WL 6706921, at \*2, 5 (E.D. Tex. Nov. 25, 2014). RFRA does not, however, expressly authorize any private right of action for damages against federal employees in their personal capacities, and neither should any such damages remedy be implied. As one court in the Southern District of Texas explained when dismissing a damages claim based on alleged RFRA violations in a federal prison, "RFRA does not contemplate recovery from individuals." *Bloch v. Samuels*, No. H-04-4861, 2006 WL 2239016, at \*7 (S.D. Tex. Aug. 3, 2006).[9]

---

[8] As discussed below in connection with Biron's official-capacity claims, this particular suit is not an appropriate one for Biron's requests for declaratory or injunctive relief, because jurisdiction is lacking.

[9] The Fifth Circuit appears not to have addressed whether RFRA authorizes an action for money damages against federal officials in their personal capacities, but it has made clear that RFRA's similarly-worded

When Congress wants to create a statutory damages remedy, it knows how to use express language to that effect. *See, e.g.*, 18 U.S.C. § 1964(c) (authorizing the recovery of "threefold damages" under RICO); 47 U.S.C. § 605(e)(3) (specifying that a court "may award damages" for violations of the Telecommunications Act); 50 U.S.C. § 1810 (authorizing "actual damages" and "punitive damages" for violations of the Foreign Intelligence Surveillance Act); *see also* 42 U.S.C. § 1983 (allowing for liability in "an action at law," in addition to a "suit in equity," for certain civil-rights violations under color of state law). But no such language appears in RFRA, and the statute's legislative history lends further support to the conclusion that money damages are not available. The Senate Judiciary Committee's report explained:

> To be absolutely clear, the act does not expand, contract or alter the ability of a claimant to obtain relief in a manner consistent with the Supreme Court[]'s free exercise jurisprudence under the compelling governmental interest test prior to *Smith.*

S. Rep. No. 103-111, at 12 (1993). The House Judiciary Committee similarly noted that RFRA was not intended to "expand, contract or alter the ability of a claimant to obtain relief" as was available prior to *Smith.* H.R. Rep. 103-88, at 8 (1993).

Congress's disclaimer of any intention to displace the existing remedial scheme

---

sister statute, the Religious Land Use and Institutionalized Persons Act (RLUIPA), does not authorize such damages against state officials in their personal capacities. *See Copeland v. Livingston*, 464 F. App'x 326, 330 (5th Cir. 2012). The standards applied under RFRA and RLUIPA are the same. *Verners v. McClure*, No. 5:14-CV-92, 2015 WL 2374412, at *5 n.1 (E.D. Tex. May 15, 2015).

Courts outside of the Fifth Circuit have come to different conclusions about whether RFRA authorizes a damages claim against federal officials in their personal capacities. *Compare Mack v. Warden Loretto FCI*, 839 F.3d 286, 301 (3d Cir. 2016) (damages remedy available), *with Ajaj v. United States*, No. 15-CV-992, 2016 WL 6212518, at *5 (D. Colo. Oct. 25, 2016) (damages remedy not available).

for alleged violations of religious liberty is significant. At the time *Smith* was decided, the Supreme Court had never recognized a *Bivens* remedy for alleged violations of the free exercise of religion (nor has it recognized such a remedy since). *See Abbasi*, 137 S. Ct. at 1854–55 (explaining what *Bivens* claims have been recognized). Accordingly, to read RFRA as allowing a claim for money damages against federal officials in their personal capacities would be to greatly expand, rather than merely "restore," the remedies available prior to *Smith*. Accordingly, Biron cannot show that a private right of action for money damages is available to her under RFRA, much less that the right to such relief is clearly established in the Fifth Circuit.

Finally, no damages are available under the Administrative Procedure Act. *See* 5 U.S.C. § 702; *King v. U.S. Dep't of Veterans Affairs*, 728 F.3d 410, 416 (5th Cir. 2013).

### 2.    Even if a damages remedy were theoretically available, the personal-capacity defendants are entitled to qualified immunity.

Even if *Bivens* or a federal statute did allow damages claims of the type contemplated by Biron, the personal-capacity defendants would still be entitled to qualified immunity and dismissal of all claims against them. A "plaintiff has the burden to negate the assertion of qualified immunity" once that defense has been raised. *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009). To establish that qualified immunity does not apply, a plaintiff must show that (1) the defendant "violated a statutory or constitutional right" of the plaintiff's and that (2) "the right was 'clearly established' at the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc). The analysis may begin at either step—and can also end there if the

plaintiff cannot carry her burden. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). That is the case here no matter where the analysis begins. At the "clearly established law" step, the defendants are entitled to qualified immunity because Biron fails to allege with the necessary specificity the violation of any clearly established constitutional or statutory right. And Biron fails to meet her burden at the first step also, because her allegations fail to state any claim for relief generally.

### a.     No clearly established law supports Biron's claims.

Identifying clearly established law sufficient to negate the defense of qualified immunity requires an "extraordinary showing" from a plaintiff. *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019). "A right is clearly established only if its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Wyatt v. Fletcher*, 718 F.3d 496, 502 (5th Cir. 2013) (quoting *Wooley v. City of Baton Rouge*, 211 F.3d 913, 919 (5th Cir. 2000)). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742. The plaintiff must identify some case giving notice that certain actions were required or forbidden "in the situation presented," *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018), by pointing to a "controlling precedent that squarely governs the specific facts at issue," *Morrow*, 917 F.3d at 876 (cleaned up).

Given these principles, the Fifth Circuit has stressed that the qualified-immunity

analysis requires framing the relevant question "with specificity and granularity."
*Morrow*, 917 F.3d at 874–75.  Accordingly, just as a plaintiff cannot overcome qualified
immunity on a Fourth Amendment claim by defining the relevant right as "the right to be
free from unreasonable searches and seizures," *City & Cnty. of San Francisco v.
Sheehan*, 135 S. Ct. 1765, 1776 (2015), Biron's allegations that removing a document
from her possession and attempting to provide sex-offender treatment violated federal
law cannot suffice to overcome the defendants' qualified immunity.  (*See* Doc. 15, ¶ 2.)
Indeed, the fact that Biron's amended complaint lumps together two constitutional
amendments and two federal statutes (the First and Fifth Amendments, RFRA, and the
Administrative Procedure Act (*see* Doc. 15, ¶ 2)) confirms that Biron fails to define the
matter with the necessary "specificity and granularity." *Morrow*, 917 F.3d at 874–75.

Biron also has not identified, and cannot identify, any precedent from the Fifth
Circuit or the Supreme Court placing the defendants on notice that their actions were in
violation of the Constitution or any federal statute.  Again, the burden is on the plaintiff
to identify some clearly established law arising from sufficiently similar factual
circumstances.  *See, e.g., Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 222 (5th
Cir. 2018) (explaining that the defendants were entitled to qualified immunity because
the plaintiff had "not carried her burden of pointing this panel to any case that shows, *in
light of the specific context of this case*, that the [defendants'] conduct violated clearly
established law" (emphasis added)).  Here, that would require showing that either the
Fifth Circuit or the Supreme Court has squarely held that prison psychologists' removal
of a sex offender's writings about "sexual conduct" violates the First and Fifth

Amendments or any federal statute, or that "secular" sex-offender treatment violates the Establishment Clause.  In the absence of any such clearly established law, the personal-capacity defendants are entitled to dismissal of all claims against them.

> **b.**     **Biron fails to allege any violation of a constitutional or statutory right, and her claims for damages are also barred by the Prison Litigation Reform Act.**
>
>> (1)     No claim is stated for the confiscation of Biron's manuscript.

Biron also fails to allege any constitutional or statutory violation in connection with the confiscation of her manuscript.  As Biron's pleadings and the related records of Biron's prior cases that are subject to judicial notice make clear, Biron:  (1) was convicted in federal court of various sex offenses; (2) was found by a state family court to need treatment for her sexually assaultive behavior and was recommended for sex-offender treatment by the federal court in which she was convicted; and (3) while in prison, wrote a manuscript relating to "sexual conduct" (Doc. 15, ¶ 13) that two prison psychologists determined needed to be removed from her possession.  Under these circumstances, Biron's allegations fail to state any claim for relief.  Although prisoners certainly do not lose all First Amendment rights when in prison, a prison regulation violates the First Amendment only if it is not "reasonably related to legitimate penological interests." *Butts v. Martin*, 877 F.3d 571, 584 (5th Cir. 2017).  Here, though, Biron alleges no facts showing that the confiscation of her manuscript was not reasonably related to legitimate penological interests.  Although Biron references that she received a final denial of her administrative-remedy requests regarding the manuscript, she tellingly declines to say what explanation for the confiscation was provided to her, and instead

merely speculates that "it is improbable that the writing was actually reviewed by anyone." (Doc. 15, ¶ 27.)  Biron has not stated any claim that the defendants' actions were unrelated to legitimate penological interests.

Biron likewise fails to state any claim under the Fifth Amendment or RFRA. Biron's complaint makes clear that she was afforded an opportunity to meet with a staff psychologist about the manuscript and was also able to challenge its confiscation—albeit unsuccessfully—through the administrative-remedy process.  (*See* Doc. 15, ¶¶ 19, 27.) No facts are alleged showing why these processes should be considered constitutionally inadequate under the Fifth Amendment, and inmates have no due-process right to have grievances resolved to their satisfaction.  *Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005).  Biron also fails to allege facts showing that she was required to "engage in conduct that seriously violates [her] religious beliefs," as would be necessary to state a RFRA claim.  *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015) (internal quotation marks and citation omitted).[10]  Indeed, Biron has referenced that she is able to pray and study the Bible, and she does not contend that any defendant has prohibited her from doing so; her only complaint is that materials of an admittedly sexual nature were confiscated from her.

        (2)      No claim is stated relating to sex offender treatment.

Biron also complains of attempts to have her participate in sex-offender treatment, asserting that "secular humanist treatment and philosophy" was forced upon her in alleged violation of the Establishment Clause of the First Amendment.  (Doc. 15, ¶ 25.)

---

[10] *Holt* was a RLUIPA case, but as noted previously, RFRA and RLUIPA are considered sister statutes, and RFRA defines religious exercise by cross-reference to RLUIPA. *See* 42 U.S.C. § 2000bb-2(4).

But as an initial matter, this claim is *Heck*-barred because it would call into question the validity of a term of Biron's criminal sentence. *Heck* bars a plaintiff from maintaining a civil rights lawsuit based on any claim that would necessarily imply the invalidity of her criminal conviction or sentence, unless "the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). Here, the judgment in Biron's criminal case specifies as a condition of supervision that Biron "must participate" in sex-offender treatment. *See United States v. Biron*, No. 12-CR-140-01-PB (D.N.H.) (judgment entered May 28, 2013, at p. 4). Accordingly, Biron's attempt to obtain relief in this lawsuit, under a theory that participating in such treatment while incarcerated violates the Establishment Clause, would call into question the validity of the post-release condition in her sentence. Because Biron has not shown that that portion of her sentence has been reversed or invalidated, *Heck* bars Biron's claim. *See Pearson v. Holder*, No. 3:09-CV-682-O, 2011 WL 13185719, at *4–6 (N.D. Tex. Apr. 29, 2011) (finding that *Heck* barred a *Bivens* claim that implied the invalidity of a term of the plaintiff's criminal sentence requiring sex-offender registration); *see also Savickas v. Walker*, 180 F. App'x 592, 593–94 (7th Cir. 2006) (same for a civil-rights claim challenging electronic detention as a condition of supervised release); *Edwards v. Pentangelo*, No. 10-C-5722, 2012 WL 138598, at *2 (N.D. Ill. Jan. 18, 2012) (same for a claim where a finding in the plaintiff's failure would "necessarily imply the invalidity" of a term of supervised release).

Biron in any event fails to state any claim for relief under the Establishment Clause. Under the standard set out in *Lemon v. Kurtzman*, 403 U.S. 602 (1971), a

government action violates the Establishment Clause if: (1) it lacks a secular purpose; (2) its primary effect either advances or inhibits religion; or (3) it excessively entangles government with religion. *Briggs v. Mississippi*, 331 F.3d 499, 505 (5th Cir. 2003); *Comer v. Scott*, 610 F.3d 929, 933–34 (5th Cir. 2010). Here, though, Biron fails to plead any facts showing a possible Establishment Clause violation. Biron does not allege that any defendant implemented a religion-based treatment program, but rather she complains that the program was *not* religious—she expressly labels it "secular." (Doc. 15, ¶¶ 8, 25.) She also fails to plead any facts showing that religion has been either advanced or inhibited, or that the government has become excessively entangled with religion in connection with sex-offender treatment. Accordingly, no Establishment Clause claim is stated. *See also McChesney v. Hogan*, No. 9:08-CV-1186, 2009 WL 607398, at *4 n.6 (N.D.N.Y. Dec. 23, 2008) ("To the extent plaintiff may be claiming the sex offender treatment program violates the Establishment Clause, the court finds that argument similarly unavailing, particularly in light of the plaintiff's failure to offer proof that the program has a non-secular purpose and that the principle or primary effect of the program is to promote or inhibit religion.").

> (3)   The Prison Litigation Reform Act bars all damages claims.

The Prison Litigation Reform Act serves as an additional, independent bar to all of Biron's damages claims. When moving to dismiss Biron's original complaint, the defendants pointed out that the Prison Litigation Reform Act precludes any recovery of compensatory damages when the inmate has not suffered a physical injury in custody, and that Biron failed to allege any such injury. (*See* Doc. 11 at 20 (citing 42 U.S.C.

§ 1997e(e); *Geiger*, 404 F.3d at 374).)

Biron attempts to circumvent this rule by alleging in her amended complaint that she suffered from an "upset stomach" after her interactions with Dixon and Armstrong. But she does not allege that either defendant ever touched her stomach or otherwise introduced some physical contaminant to it. Thus, Biron claims only a psychosomatic injury, one allegedly attributable to mental distress. (*See, e.g.*, Doc. 15, ¶ 18 (asserting that Dixon's actions caused Biron "extreme mental distress which resulted in panic attacks and an upset stomach because [Biron] could not fathom that this incident could happen in the United States of America").) Such an injury does not satisfy the Prison Litigation Reform Act's physical-injury requirement. *See, e.g.*, *Figueroa v. Wright*, No. 9:07-CV-1223, 2009 WL 674262, at *8 (N.D.N.Y. Mar. 11, 2009) (explaining that "numerous courts have held . . . that even physical manifestations of emotional injuries (e.g., anxiety, depression, stress, nausea, hyperventilation, headaches, insomnia, dizziness, appetite loss, weight loss, etc.) are not 'physical injuries' for purposes of the PLRA"); *Cain v. Virginia*, 982 F. Supp. 1132, 1135 & n.3 (E.D. Va. 1997) (rejecting an inmate's attempt to rely on depression and headaches caused by emotional distress to satisfy the physical-injury requirement). In addition, even if the alleged injuries were not psychosomatic, they would still fail to support Biron's claims because they were, at most, *de minimus*, and thus still do not meet the physical-injury requirement. *See Alexander v. Tippah Cnty.*, 351 F.3d 626, 631 (5th Cir. 2003) (explaining that nausea caused by an inmate's placement in an unsanitary cell with raw sewage was *de minimus*, and therefore failed to satisfy the physical-injury requirement); *Siglar v. Hightower*, 112 F.3d 191,

193–94 (5th Cir. 1997) (same for a sore ear).

Finally, without any viable claim of a violation by the defendants, there is no basis for punitive damages, and Biron has in any event "not alleged facts showing that the defendants' conduct was so egregious or reprehensible as to warrant punitive damages." *Bloch*, 2006 WL 2239016, at *6 (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003); *BMW of N. Amer. Inc. v. Gore*, 517 U.S. 559, 575 (1996)).

## B.   Biron cannot establish jurisdiction for her official-capacity claims for declaratory and injunctive relief.

When Biron initially filed this case in state court, her complaint included claims for declaratory and injunctive relief relating to the confiscation of her manuscript. (*See* Doc. 1-5, ¶¶ 19–20.) After removing the case, the defendants explained in their motion to dismiss that no jurisdiction existed for any such claims because: (1) official-capacity claims against federal officials are equivalent to claims against the government itself, yet Biron had not identified any waiver of sovereign immunity, and (2) insofar as Congress had not consented to suit in state court, the doctrine of derivate jurisdiction applied to preclude Biron from establishing jurisdiction after removal. (*See* Doc. 11 at 21–23.)

In her amended complaint, Biron restates her claims for declaratory and injunctive relief relating to the manuscript. But because these claims were originally filed in state court, the doctrine of derivative jurisdiction applies and Biron cannot establish jurisdiction for them in this Court. Under the doctrine of derivative jurisdiction, "when a case is removed from state to federal court, the jurisdiction of the federal court is derived from the state court's jurisdiction." *Lopez v. Sentrillon Corp.*, 749 F.3d 347, 350 (5th

Cir. 2014). "Thus, where the state court lacks jurisdiction of the subject matter or of the parties, the federal court acquires none . . . ." *Id.* (cleaned up). Biron has not shown, and cannot show, that the government consented to be sued in state court on any claims relating to the manuscript. There is no general waiver of the government's immunity so as to permit state-court suits against federal agencies or federal officials sued in official capacities. *See Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 85–86 (1991) (recounting the history of federal agencies' and officials' sovereign immunity to suit in state court). Moreover, in instances in which Congress has chosen to waive the government's immunity to suit in state court, it has used language clearly allowing for that result. *See, e.g.*, 28 U.S.C. § 2410(a) (authorizing certain quiet-title and other real-property suits "in any State court having jurisdiction"). No such language allowing for suit in state court against the government can be found in RFRA or in any other federal statute, much less language providing a waiver of immunity "unequivocally." *See Lane v. Pena*, 518 U.S. 187, 192 (1996). Accordingly, because no jurisdiction existed for Biron's official-capacity claims relating to the manuscript in state court, such claims cannot proceed in this Court after removal. *See also Morgan v. FBI*, No. A-16-CV-1290-LY, 2017 WL 1322251, at *2 (W.D. Tex. Apr. 10, 2017) (dismissing claims that had originally been filed in state court for injunctive relief against various federal defendants). Moreover, it does not matter that Biron has now filed an amended complaint or that jurisdiction may have existed for other claims (such as *Bivens* claims) in state court or in this Court. *See Spencer v. New Orleans Levee Bd.*, 737 F.2d 435, 437 (5th Cir. 1984) (affirming the dismissal of a Federal Tort Claims Act claim pursuant to

the doctrine of derivative jurisdiction, notwithstanding the presence of other claims over which the state court and district court possessed jurisdiction); *Pavlov v. Parsons*, 574 F. Supp. 393, 395, 396–97, 399 (S.D. Tex. 1983) (explaining, with respect to claims for damages and injunctive relief originally filed in state court against two federal defendants, that pursuant to the doctrine of derivative jurisdiction the district court could entertain the damages claims after removal but not the claims for injunctive relief, even though the plaintiff had filed an amended complaint); *see also Delorenzo v. HP Enter. Servs., LLC*, No. 8:14-CV-1070, 2014 WL 5590905, at *1 (M.D. Fla. Nov. 3, 2014) ("The state court's subject matter jurisdiction over the plaintiff's *Bivens* claim fails to remedy the lack of jurisdiction over the plaintiff's tort claim, which is subject to the derivative-jurisdiction doctrine."); *Francis v. ENI Exploration Program 1980-II*, No. 84-0005-CV, 1984 WL 817 (W.D. Mo. May 25, 1984) ("The Court does not believe a plaintiff can bootstrap around the derivative jurisdiction doctrine by merely 'amending' the complaint to reallege the same cause of action.").

Finally, to the extent Biron now seeks declaratory or injunctive relief to prevent the defendants from providing psychological treatment to her, any such claims are moot, and thus jurisdiction is lacking, because Biron is no longer incarcerated at FMC Carswell. *See Tamfu v. Ashcroft*, 54 F. App'x 408 (5th Cir. 2002); *Edwards v. Johnson*, 209 F.3d 772, 776 (5th Cir. 2000); *Pembroke v. Wood Cnty.*, 981 F.2d 225, 228 (5th Cir. 1993).

## V.    Conclusion

For all these reasons, the Court should dismiss Biron's amended complaint. The defendants further request that costs be awarded against Biron.

Respectfully submitted,

ERIN NEALY COX
United States Attorney

*Brian W. Stoltz*
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:   214-659-8626
Facsimile:    214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants

## Certificate of Service

On June **3**, 2019, I served the foregoing document (and its accompanying

proposed order) on plaintiff Lisa Biron by mailing it to her by certified mail (#7018 2290

0001 4480 3805), addressed as follows:

Lisa Biron # 12775-049
FCI Waseca
P.O. Box 1731
Waseca, MN 56093

*Brian W. Stoltz*
Brian W. Stoltz
Assistant United States Attorney

Defendants' Motion to Dismiss Plaintiff's First Amended Complaint – Page 26