UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUL - 8 2019

CLERK, U.S. DISTRICT COURT
By_____
                    Deputy

Lisa A. Biron,                    )
      Plaintiff                   )
                                  )
                                  )
v.                                )      Civil Action No. 4:19-cv-322 _A
                                  )
                                  )
FMC Carswell Warden Jody Upton,   )
et al.,                           )
      Defendants                  )
                                  )
                                  )

### Plaintiff's Supplemental Opposition to Defendants' Motion to Dismiss

## Table of Contents

Table of Authorities  ......................................  iii

Introduction  ............................................  1

The Court Has Jurisdiction to Order
Injunctive Relief  .......................................  1

Amendment After Removal  .................................  5

Qualified Immunity  ......................................  9

The PLRA Does Not Bar Damages  ...........................  13

Punitive Damages  ........................................  14

Heck Does Not Bar the Claims  ............................  14

The Establishment Clause  ................................  14

Conclusion  ..............................................  15

## Table of Authorities

Cases

In re Allstate Ins., Co.,
    8 F.3d 219 (5th Cir. 1993) ............................ 1

Anderson v. Creighton,
    483 U.S. 635 (1987) .................................. 9

Azzopardi v. Ocean Drilling & Exploration Co.,
    742 F.2d 890 (5th Cir. 1984) ........................ 6

Camsoft Data Sys v. Southern Elecs Supply Inc.,
    756 F.3d 327 (5th Cir. 2014) ........................ 3, 4, 5

Cruzan v. Div., Mo. Dep't of Health,
    497 U.S. 261 (1990) .................................. 11

Darden v. City of Fort Worth,
    880 F.3d 722 (5th Cir. 2018) ........................ 12

Freeman v. Bee Mach. Co.,
    319 U.S. 448 (1943) .................................. 5, 6

Freeman v. Texas Dep't of Criminal Justice,
    369 F.3d 854 (5th Cir. 2004) ........................ 8

Hammer v. United States HHS,
    905 F.3d 517 (7th Cir. 2018) ........................ 2, 3

Harold H. Higgins Realty, Inc. v. FNC, Inc.,
    634 F.3d 787 (5th Cir. 2011) ........................ 4

Harlow v. Fitzgerald,
    457 U.S. 800 (1982) .................................. 9

Heck v. Humphrey,
    512 U.S. 477 (1994) .................................. 14

Hope v. Pelzer,
    536 U.S. 730 (2002) .................................. 9

Hutchins v. McDaniels,
    512 F.3d 193 (5th Cir. 2007) ......................... 13

James v. Bleigh,
    No. 2:19-cv-17, 2019 Dist. LEXIS 77626
    (E.D. Mo. May 8, 2019) .............................. 2

Kidd v. Sw. Airlines, Co.,
    891 F.2d 540 (5th Cir. 1990) ....................... 3

King v. Dogan,
    31 F.3d 344 (5th Cir. 1994) ........................ 5

Lopez v. Sentrillon Corp.,
    749 F.3d 347 (5th Cir. 2014) ..................... 7, 8

Mitchell v. Maurer,
    293 U.S. 237 (1934) ............................ 2, 3, 7

Mutual Film Corp. v. Industrial Com.,
    236 U.S. 230 (1915) ............................... 10

North Dakota v. Fredericks,
    940 F.2d 333 (8th Cir. 1991) ....................... 2

Pell v. Procunier,
    417 U.S. 817 (1974) ............................ 10, 11

Phillips v. Hust,
    477 F.3d 1070 (9th Cir. 2007) ..................... 13

Procunier v. Martinez,
    416 U.S. 396 (1974) ............................... 10

Robinson v. Page,
    170 F.3d 747 (7th Cir. 1999) ...................... 13

Rodas v. Seidlin,
    656 F.3d 610 (7th Cir. 2011) ...................... 2, 3

Roth v. United States,
    354 U.S. 476 (1957) ............................... 10

Rowe v. Shake,
    196 F.3d 778 (7th Cir. 1999) ...................... 13

Spencer v. New Orleans Levee Bd.,
    737 F.2d 435 (5th Cir. 1984) ...................... 8

Stanley v. Georgia,
    394 U.S. 557 (1969) .............................. 10

Stanton v. Sims,
    571 U.S. 3 (2013) ............................... 13

Steel Co. v. Citizens for a Better Environment,
    523 U.S. 83 (1998) .............................. 2

Thompson v. Upshur Cnty, Tex.,
    245 F.3d 447 (5th Cir. 2001) ..................... 11

Turner v. Safley,
    482 U.S. 78 (1987) .............................. 10, 11

United States v. Am. Library Assoc.,
    539 U.S. 194 (2003) ............................. 10

Wilkerson v. United States,
    67 F.3d 112 (5th Cir. 1995) ..................... 8

Williams v. Kaufman Cnty,
    352 F.3d 994 (5th Cir. 2003) ..................... 14


Statutes

28 U.S.C. § 81       ................................... 6

28 U.S.C. § 1442(a) ................................... 7

42 U.S.C. § 1997e(e) ................................. 13


Other Authorities

1A J. Moore & B. Ringle, Moore's Fed. Pract.,
    (2d ed. 1986) .................................. 8

F.B.O.P. Program Statement, 5350.27,
    Inmate Manuscripts .............................. 12

Introduction

On May 17, 2019, Plaintiff filed Plaintiff's Opposition to Defendants' Motion to Dismiss wherein she addressed the defendants' arguments that money damages are not available under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) and that the Religious Freedom Restoration Act ("RFRA") does not provide for money damages against federal officials in their individual capacities.  In this supplemental opposition she will address the remainder of defendants' arguments for dismissal.

A Bivens Remedy Is Available

Ms. Biron hereby incorporates by reference pages 2-11 of her May 17, 2019 Opposition to Defendants' Motion to Dismiss.

RFRA Authorizes Individual Capacity Suits Against Federal Officials For Money Damages

Ms. Biron hereby incorporates by reference pages 11-13 of her May 17, 2019 Opposition to Defendants' Motion to Dismiss.

The Court Has Jurisdiction to Order Injunctive Relief

The doctrine of derivative jurisdiction does not deprive this Court of subject matter jurisdiction to order the defendants to return Ms. Biron's Christian writing to her.  Derivative jurisdiction is a procedural doctrine; and to the extent a procedural defect existed after removal, it was completely cured upon filing the First Amended Complaint.

The Fifth Circuit has explained that "any defect that does not go to the question of whether the case originally could have been brought in federal district court" is procedural not jurisdictional.  In re Allstate Ins. Co., 8 F.3d 219, 221 (5th Cir. 1993). "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is the power

to declare the law, and when it ceases to exist, the only function re-
maining to the court is that of announcing the fact and dismissing the
cause." Steel Co. v. Citizens for a Better Environment, 523 U.S. 83,
94 (1998) (internal citation omitted).

The circuits[1] that still employ the doctrine of derivative juris-
diction consider it a procedural doctrine because, as the following anal-
ysis shows, its application may be waived.  In contrast, an authentic
lack of federal subject matter jurisdiction can never be waived. See
Mitchell v. Maurer, 293 U.S. 237, 244 (1934).

The Seventh Circuit explained that derivative jurisdiction, despite
its name, is "'a procedural bar to the exercise of federal jurisdiction-
al power' and does not go to the court's subject matter jurisdiction."
Hammer v. United States HHS, 905 F.3d 517, 535 (7th Cir. 2018) (quoting
Rodas v. Seidlin, 656 F.3d 610, 619 (7th Cir. 2011)).  In Hammer and
Rodas the district courts had entered judgment in the removed cases on
the merits, and subject matter jurisdiction was subsequently challenged
on appeal.  The government argued that the doctrine of derivative juris-
diction created a latent jurisdictional defect that persisted on appeal.
Specifically, the government-defendants argued that the state courts lack-
ed jurisdiction so the federal courts acquired none on removal.  The

---

1 The Eighth Circuit has abolished the arcane doctrine of derivative jur-
isdiction completely, noting that the judicially created doctrine "owes
its origin to nothing whatever in the removal statutes themselves, but
rather to a formalistic conception, entirely divorced from reality, that
a case originally filed in a court without jurisdiction is doomed to be
a nullity forever, even after transfer to a completely different forum."
James v. Bleigh, no. 2:19-cv-17, 2019 U.S. Dist. LEXIS 77626 *9 (E.D.
Mo. May 8, 2019) (quoting North Dakota v. Fredericks, 940 F.2d 333, 338
(8th Cir. 1991)).  It characterized the doctrine as the kind of rigmarole
that is unworthy of a civilized judicial system." Id.

Seventh Circuit disagreed.  It explained,

> the doctrine [of derivative jurisdiction] creates
> a defect in removal, but is not an essential in-
> gredient to federal subject matter jurisdiction.
> Because the district court would have had juris-
> diction over a hypothetical complaint filed at
> the time it entered the judgment now under review,
> the fact that the state court lacked jurisdiction
> over the case when it was removed has no signif-
> icance.

Rodas, 656 F.3d at 619; see also Kidd v. Sw. Airlines, Co., 891 F.2d

540, 546 (5th Cir. 1990) ("Where the disgruntled party takes full advan-

tage of the federal forum . . . that party has waived all objections to

removal jurisdiction.").  If the doctrine of derivative jurisdiction

truly divested a federal court of subject matter jurisdiction, the cir-

cuit court could not have heard the Hammer and Rodas appeals.  See Mitch-

ell, 293 U.S. at 244 ("An appellate federal court must satisfy itself

not only of its own jurisdiction, but also of that of the lower courts

in a case under review.").

Likewise, the Fifth Circuit has held that a federal court has sub-

ject matter jurisdiction over federal claims brought after removal from

state court.  In Camsoft Data Sys. v. Southern Elecs. Supply Inc., 756

F.3d 327, 331 (5th Cir. 2014), the plaintiff filed suit in state court

alleging various state law statutory and common law claims against mult-

iple defendants.  The claims arose out of its invention and development

of a surveillance system on which there was a patent application pend-

ing.

The case was removed to federal court on the basis of the patent

law issue.  After removal, Camsoft amended its complaint to bring feder-

al anti-trust  and racketeering claims.  These claims were dismissed

3

because Camsoft had no standing under the governing statutes. The court
found the patent issue abandoned and remanded the remaining state law
claims back to state court.[2]

Subsequently, various defendants appealed and Camsoft moved to dis-
miss the appeal for lack of appellate jurisdiction. In examining its
appellate jurisdiction, the court noted that it "has jurisdiction to
review a remand order unless the case was remanded for lack of subject
matter jurisdiction . . . ." Id. Camsoft argued that its anti-trust
and RICO claims were dismissed for lack of subject matter jurisdiction,
thus, depriving the appellate court of appellate jurisdiction. The Fifth
Circuit disagreed. It held that the district court did, in fact, have
subject matter jurisdiction over the federal claims. The claims, it
clarified, were dismissed for Camsoft's lack of statutory standing[3] not
for lack of subject matter jurisdiction. Id.

In sum, the doctrine of derivative jurisdiction does not deprive
a federal court of subject matter jurisdiction. The Fifth Circuit clear-
ly treats the doctrine as procedural. As removed, this Court has juris-
diction—indeed, it has original jurisdiction—over all of Ms. Biron's
claims. But assuming, arguendo, there was a procedural defect in regard
to the official capacity claims for injunctive relief, this alleged de-
fect was completely cured at the time Ms. Biron filed her First Amended
Complaint.

---

2 Ultimately, the court of appeals determined that removal was improper in
the first place because the federal courts do not have jurisdiction over
patent applications for patents that have not yet issued. Camsoft, 756
F.3d at 332.
3 Statutory standing is not indicative of Article III standing. See
Harold H. Higgins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 795 n.2 (5th Cir.
2011).

Amendment After Removal

Controlling Supreme Court and Fifth Circuit precedent[4] clearly est-
ablishes that a complaint may be amended to state or re-state federal
claims after the cause is removed from state court even if the amended
claims could not have been brought in state court.

As set forth above, the plaintiff in Camsoft brought federal anti-
trust and federal RICO claims via its amended complaint after the case
was removed to federal court. The Fifth Circuit noted, "After unsucces-
sfully contesting removal, Camsoft seemingly resigned itself to its jur-
isdictional fate by amending its complaint to include federal anti-trust
and RICO claims." Camsoft, 756 F.3d at 333; see also King v. Dogan,
31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the
original complaint and renders it of no legal effect . . . . ").

In Freeman v. Bee Mach. Co., 319 U.S. 448 (1943), the plaintiff
filed a claim in state court for breach of contract. The defendants
removed the case to federal court. After removal, the plaintiff amend-
ed its complaint to add a claim for treble damages under the Clayton
Act. If the derivative jurisdiction doctrine truly defined the federal
court's subject matter jurisdiction then the state court's lack of juris-
diction over the Clayton Act claim should have barred the amendment.
But the Supreme Court stated,

---

4 The defendants not only failed to acknowledge or distinguish this ad-
verse controlling authority in their motion to dismiss, they mislead
this Court in the correct application of the law by, instead, citing
non-binding district court cases with questionable outcomes only one of
which is from a court in this circuit. See Defts' Mot. to Dis., p. 25
(citing a case from the Southern District of Texas, from the Middle Dist-
rict of Florida, and from the Western District of Missouri).

> We see no reason in precedent or policy . . .
> to bar amendments to the complaint, otherwise
> proper, merely because they could not have been
> made if the action had remained in state court.
> If the federal court has jurisdiction of the re-
> moved cause and if the amendment to the complaint
> could have been made had the suit originated in
> the federal court, the fact that the federal
> court acquired jurisdiction by removal does not
> deprive it of the power to allow the amendment.

Id. at 451.  The Court explained that Congress has provided that a case

removed from state court to federal court shall "proceed therein as if

the suit had been originally commenced in said district court . . . ."

Id. at 452 (quoting 28 U.S.C. § 81).  This, the Court explained, "pre-

serves to the federal District Courts the full arsenal of authority with

which they have been endowed.  Included in that authority is the power

to permit a recasting of pleadings or amendments to complaints in accord-

ance with the federal rules."  Id.

In discussing the effect of amending a complaint under the doctrine

of derivative jurisdiction, the Fifth Circuit stated,

> Even assuming that the state court was without
> jurisdiction over the DOSHA [(Death on the High Seas
> Act)] claim, and the district court could thus
> acquire no jurisdiction of it on removal, [plaint-
> iff's] survival claim . . . was properly removed.
> [Plaintiff's] amended district court complaint
> restated his DOSHA claim against [the defendants],
> thus bringing the DOSHA claim properly before
> the district court.

Azzopardi v. Ocean Drilling & Exploration Co., 742 F.2d 890, 892 (5th

Cir. 1984).

Clearly, the defendants' contention that the doctrine of derivative

jurisdiction bars this Court's jurisdiction over claims brought in an

amended complaint after removal has no basis in Supreme Court and Fifth

Circuit precedent.  Ms. Biron's First Amended Complaint is the operative

complaint in this case and the Court has original/subject matter jurisdiction over all her claims.

In their motion to dismiss, the defendants cite, without analysis, two Fifth Circuit cases that upheld the dismissal of claims and parties under the doctrine of derivative jurisdiction. But even a cursory analysis of these cases reveals that the doctrine was applied as a procedural bar under circumstances wholly distinguishable from the present case.

In Lopez v. Sentillon Corp., 749 F.3d 347, 348 (5th Cir. 2014), Lopez filed suit in state court against a general contractor, Sentrillon, for injuries sustained while working on a construction project for the United States Custom and Border Protection. Sentrillon, in turn, filed third-party indemnity and contribution claims under the Federal Tort Claims Act ("FTCA") against the United States. The United States removed the case to federal court under 28 U.S.C. § 1442(a) and moved to dismiss the FTCA claims under the derivative jurisdiction doctrine. The district court initially found that the United States had waived[5] enforcement of the doctrine, but on reconsideration changed course stating, "that when the derivative jurisdiction doctrine is raised promptly upon removal prior to adjudication of the merits, the doctrine must be invoked to limit the federal court's jurisdiction, if any, to that of the state court." Id. Therefore, the district court dismissed Sentrillon's third-party claims against the United States. Consequently, the district court found that without the third-party FTCA claim there were no claims for which it had original jurisdiction and, therefore, it declined to exercise supplemental jurisdiction over Lopez's state law claims and remand-

---

5 Lack of federal subject matter jurisdiction can never be waived. See Mitchell, 293 U.S. at 244.

ed the case back to state court.  Id. at 349.

Similarly, in Spencer v. New Orleans Levee Bd., 737 F.2d 435, 436 (5th Cir. 1984), the plaintiffs sued the Levee Board for negligent operation of the levees.  The Levee Board, in turn, filed a third-party complaint against the National Weather Service (i.e., the United States) under the FTCA alleging failure to predict the weather and tidal conditions accurately.  The United States removed the case to federal court where the court dismissed the FTCA claims and the United States under the doctrine of derivative jurisdiction.  Left with no claims over which it had original jurisdiction, it remanded the main demand back to state court.  Id.

Lopez and Spencer have no application to the present case.  Lopez and Spencer affirmed the district courts' dismissal of exclusively federal FTCA claims brought in state court by third-party plaintiffs against third-party defendants.  Without the third-party FTCA claims, the federal courts were left with no jurisdiction over any of the remaining state law claims.

In contrast, Ms. Biron brought claims against the defendants in state court in their individual and official capacities for damages and injunctive relief.  There are no third-party plaintiffs or third-party defendants.  The state and federal courts have concurrent jurisdiction over, at least[6], all of her claims for damages.  There is absolutely no justi-

---

6 There is a legitimate argument that the state court had jurisdiction over the official capacity, injunctive relief claims, too.  While the government's sovereign immunity to suit in state court is an affirmative defense—indeed, a complete defense—it is not a jurisdictional defect. See Wilkerson v. United States, 67 F.3d 112, 120 n.13 (5th Cir. 1995) ("Sovereign immunity and subject matter jurisdiction are distinct doctrines.").  "Sovereign immunity is not a jurisdictional defense." 1A J. Moore & B. Ringle, Moore's Federal Practice at 681 n.16 (2d ed. 1986).

fication for this Court to dismiss the injunctive relief claims so that Ms. Biron can re-file them in a separate case, and then move to consolidate the new case with this case because the injunctive claims involve the same defendants and are based on the same facts as the instant case; Lopez and Spencer do not require such a senseless and wasteful exercise.

Qualified Immunity

"The doctrine of qualified immunity affords protection against individual liability for civil damages to officials 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Federal courts use a two-part test to determine whether the defendants are entitled to qualified immunity. Freeman v. Texas Dep't of Criminal Justice, 369 F.3d 854, 863 (5th Cir. 2004). The court must determine whether plaintiff's allegations, if true, establish a constitutional violation. Hope, 536 U.S. at 736; Freeman, 369 F.3d at 863. If a constitutional right was violated, the court must decide whether the right was clearly established at the time of the violation. Freeman, 369 F.3d at 863. "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" Hope, 536 U.S. at 739 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

<u>Qualified Immunity Does Not Shield the Defendants From Liability</u>
<u>For Violating Ms. Biron's First Amendment Right to Freedom of</u>
<u>Expression</u>

The defendants have violated Ms. Biron's clearly established right

to freedom of expression by stealing her Christian writing and they are

not protected by qualified immunity.

> The First Amendment serves not only the needs
> of the polity but also those of the human spirit
> — a spirit that demands self-expression.  Such
> expression is an integral part of the develop-
> ment of ideas and a sense of identity.  To supp-
> ress expression is to reject the basic human
> desire for recognition and affront the individ-
> ual's worth and dignity.

<u>Procunier v. Martinez</u>, 416 U.S. 396, 427 (1974) (citing <u>Stanley v. Georg-</u>

<u>ia</u>, 394 U.S. 557 (1969).  "We need not pause to dilate upon the freedom

of opinion and its expression, and whether by speech, writing, or print-

ing.  They are too certain to need discussion — of such conceded value as

to need no supporting praise."  <u>Mutual Film Corp. v. Industrial Com.</u>,

236 U.S. 230, 243 (1915).  "The purpose of the First Amendment is to

protect private expression."  <u>United States v. Am. Library Assoc.</u>, 539

U.S. 194, 211 (2003).  "The fundamental freedoms of speech and press have

contributed greatly to the development and well-being of our free society

and are indispensable to its continued growth.  Ceaseless vigilance is the

watchword to prevent their erosion . . . ."  <u>Roth v. United States</u>, 354

U.S. 476, 488 (1957).

"[A] prison inmate retains those First Amendment Rights that are

not inconsistent with [her] status as a prisoner or with the legitimate

penological objectives of the corrections system."  <u>Pell v. Procunier</u>,

417 U.S. 817, 822 (1974).  In <u>Turner v. Safley</u>, the Supreme Court pre-

scribed four factors that should be considered in determining the consti-

tutionality of a prison's restrictions on free speech: (1) whether a valid, rational connection exists between the regulation and the government interest it protects; (2) whether prisoners have alternate means of exercising the protected right; (3) the impact of accomodating the right on other inmates, guards, and the allocation of prison resources generally; and (4) whether alternatives exist that fully accommodate the prisoner's rights at a de minimis cost to valid penological interests. Turner v. Safley, 482 U.S. 78, 89-90 (1987).

While the court should give deference to a prison official's judgment in establishing, interpreting, and applying prison regulations, such deference does not amount to an abdication of the court's responsibility to protect the constitutional rights of prisoners. Id. at 84. "When a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights." Procunier, 416 U.S. at 405-06.

In the present case, the actions of the defendants in stealing Ms. Biron's Christian, Biblical (non-sexually explicit) private writing are indefensible. Remarkably, defendants' motion to dismiss fails to mention Turner v. Safley, let alone offer any justification to satisfy even the first Turner-factor.

To the extent the defendants claim, as it appears they do in their motion to dismiss, that they took Ms. Biron's writing because they thought it was inconsistent with her rehabilitation, they have admitted to violating her clearly established constitutional right to refuse medical treatment. See Cruzan v. Div., Mo. Dep't of Health, 497 U.S. 261, 278 (1990) ("A competent person has a constitutionally protected  liberty interest in refusing unwanted medical treatment."); Thompson v. Upshur Cnty, Tex.,

11

245 F.3d 447, 462 n.10 (5th Cir. 2001) ("There is no question that a competent person has a liberty interest in refusing unwanted medical treatment.")

Ms. Biron was not enrolled in sex offender treatment or programming such that she waived her constitutional rights. Nor did she consent to the imposition of specialized, stricter rules not imposed on other inmates, or to the censorship of her private writings by government-employed psychologists.

Assuming the defendants did not intend to admit to forcing psychological treatment upon Ms. Biron, they cannot identify a single legitimate government interest that was served by the confiscation of the writing. Ms. Biron has clearly alleged that her writing is Biblical; it is not sexually explicit;[7] it was in her locker; and it could not possibly threaten the safety and security of the institution or endanger the public. Indeed, the defendants' own program statement promotes and encourages such writing by inmates. See PS 5350.27, Inmate Manuscripts.

In addition, this was not a situation in which the defendants had to make a split-second decision. See Darden v. City of Fort Worth, 880 F.3d 722, 732 (5th Cir. 2018) (factoring in the non-emergency nature of the situation in denying qualified immunity). The defendants had twenty (20) days from the time they removed the writing from Ms. Biron's locker to the time it was permanently confiscated. This was ample time to discover that Ms. Biron was not under a treatment contract and to consult with their attorneys regarding the legalities of their actions.

---

7 Ms. Biron has alleged and maintains that, like the rest of the inmate population, she has the right to write about anything she wants as long as it does not threaten the safety and security of the institution.

In sum, Ms. Biron's constitutional right to write about anything that does not threaten or endanger the staff, other inmates, or the public is clearly established and has been for decades.  The defendants join the class of the "plainly incompetent" which qualified immunity is not meant to protect.  See Stanton v. Sims, 571 U.S. 3, 6 (2013).

The PLRA Does Not Bar Damages

Title 42 U.S.C. § 1997e(e) declares "No federal civil action may be brought by a prisoner . . . for mental or emotional injury . . . without a prior showing of physical injury."

Ms. Biron did not bring any claims for mental or emotional injury. She brought claims for First Amendment violations and for RFRA violations and for violations of the APA.  Thus, damages are not barred by § 1997e(e). See Rowe v. Shake, 196 F.3d 778, 781-82 (7th Cir. 1999) ("A prisoner is entitled to judicial relief for a violation of his First Amendment rights aside from any physical, mental, or emotional injury he may have sustained."); Robinson v. Page, 170 F.3d 747, 748 (7th Cir. 1999) ("It would be a serious mistake to interpret section 1997e(e) to require a showing of physical injury in all prisoner civil rights suits.").

Moreover, "§ 1997e(e) does not bar . . . recovery of nominal or punitive damages." Hutchins v. McDaniels, 512 F.3d 193, 198 (5th Cir. 2007). Although Ms. Biron did not request nominal damages in her complaint, she sought "compensatory and punitive damages" and "such other relief as is deemed just and equitable" which should be read to encompass nominal damages.  The Ninth Circuit also has held that § 1997e(e) does not apply to First Amendment claims regardless of the form of relief sought.  Phillips v. Hust, 477 F.3d 1070 (9th Cir. 2007).

Regardless, Ms. Biron has alleged more than a de minimis

13

physical injuries in her amended complaint—panic attacks and upset stomach.   Surely the statute does not contemplate that a First Amendment violation would ever cause a sustantial physical injury.

Punitive Damages

The defendants actions were egregious and support an award of punitive damages.  They acted with an evil motive.  See Williams v. Kaufman County, 352 F.3d 994, 1015 (5th Cir. 2003).  Specifically, Ms. Biron can prove evil intent by other acts against her by defendant-Armstrong that are not detailed in her complaint.  Defendant-Armstrong lied and concocted an incident report against Ms. Biron, and Ms. Biron has a memorandum from a Carswell Chaplain (directly contradicting Armstrong's lie) and a report from the Disciplinary Hearing Officer (contradicting Armstrong's lie and expunging the charge) as proof of this lie.  An inference can be drawn in support of her evil motives toward Ms. Biron.

Heck Does Not Bar the Claims

Heck v. Humphrey, 512 U.S. 477 (1994) bars claims for damages that would necessarily imply the invalidity of a defendant's sentence or conviction. The Heck doctrine does not bar any of Ms. Biron's claims.  A finding that defendants' actions in stealing her writing amounted to forced psychological treatment does nothing to invalidate a supervised release condition that is not in effect and has not been challenged. Outside of the FBOP, it is likely that programs exist where facilitators are not hostile to Christianity such that its imposition will not violate the Establishment Clause.  Regardless, defendants' suggested application of the Heck doctrine is a bridge too far.

The Establishment Clause

Ms. Biron alleges that the forced treatment trampled her exercise

of her Christian faith and sought to impose the religion of secular humanism upon her.  She has stated an Establishment Clause claim.

Conclusion

Wherefore, considering all of Ms. Biron's allegations in the complaint as true, she has stated valid claims against the defendants for violations of her rights under the Constitution and federal law.  Defendants' motion to dismiss should be denied in its entirety.

Respectfully submitted

7/3/19
Date

Lisa Biron (#12775-049)
FCI Waseca
P.O. Box 1731
Waseca, MN 56093

**Certification**

I hereby certify that a copy of this Opposition was mailed to AUSA Brian Stoltz postage paid on   7/3/19  .

Lisa Biron

**Declaration of Timely Filing**

I hereby swear, under penalty of perjury, that this Opposition was mailed to this Court by depositing said document postage paid into the inmate legal mail system on this date.

7/3/19
Date

Lisa Biron

Minneapolis MN 554

FRI 05 JUL 2019
PM 3

Lisa Biron
12775-049
Federal Correctional Institution
PO Box 1731
Waseca, MN 56093

7/1/19

The enclosed letter was processed through special mailing
procedures for forwarding to you. The letter has neither
been opened nor inspected. If the writer raises a question
or problem over which this facility has jurisdiction, it
may be returned...
sender...
forwarded to...
to the above...

<>12775-049<>
Us District Court
Clerk of Court
501 W 10TH ST
Room 310
FORT Worth, TX 76102
United States

2019 JUL -8  PM 12: 36

DEPUTY CLERK

Federal Correctional Institution
P.O. Box 1731
Waseca, MN 56093-0741

7/5/19