ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUL 22 2019
CLERK, U.S. DISTRICT COURT
By _____ Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| LISA BIRON,<br><br>    Plaintiff,<br><br>v.<br><br>FEDERAL MEDICAL CENTER ("FMC")<br>CARSWELL WARDEN JODY UPTON;<br>FMC CARSWELL PSYCHOLOGIST<br>LETICIA A. ARMSTRONG; FMC<br>CARSWELL PSYCHOLOGIST E. DIXON,<br><br>    Defendants. | Civil Action No. 4:19-CV-322-A |

### REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

ERIN NEALY COX
United States Attorney

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8626
Facsimile: 214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants

Plaintiff Lisa Biron asserts two sets of claims in this case: personal-capacity claims for money damages, and official-capacity claims for declaratory or injunctive relief. But for the reasons given in the defendants' underlying motion (Doc. 17) and as further discussed herein, all of Biron's claims should be dismissed. With respect to the personal-capacity claims, Biron fails to show that a damages remedy is available and also fails to overcome the defendants' qualified immunity and other bars to suit. With respect to the official-capacity claims, the doctrine of derivative jurisdiction continues to apply and precludes Biron from establishing jurisdiction for claims against the defendants in their official capacities—which in truth represent claims against the government itself—because no such jurisdiction existed when this suit was originally filed in state court. Dismissal of the first amended complaint, in its entirety, is therefore warranted.

## I.     Argument and Authorities

**A.     With respect to her personal-capacity claims, Biron fails to show that a damages remedy should be recognized and, in any event, cannot overcome the defendants' qualified immunity and other bars to suit.**

1.     First, on the issue of whether a remedy should be implied under *Bivens*,[1] Biron does not dispute that her claims arise in a new context for purposes of the analysis required by the Supreme Court's *Abbasi* decision. (*See* Doc. 16 at 3; *see also* Doc. 17 at 6–7 (citing *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017)).) When a new context is present, no *Bivens* remedy should be implied if there are reasons to think that Congress *might* doubt the efficacy of a new remedy, or if there is an alternative remedial structure in place or

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

any other special factors counseling against expansion of the disfavored *Bivens* remedy. *See Abbasi*, 137 S. Ct. at 1858. As noted in the defendants' motion, there are numerous reasons that no *Bivens* remedy is available in the context of Biron's claims, including because: (1) Congress, despite ample opportunity, has not elected to create such a remedy; (2) a number of alternative processes are available, including administratively and in the courts; and (3) separation-of-powers principles counsel against expansion of *Bivens* here. (*See* Doc. 17 at 8–12.)

In her response, Biron seeks to distinguish *Abbasi* on its facts, i.e., as a case involving "illegal aliens" as opposed to what she categorizes as her "mine-run case concerning the violation of prisoner civil rights." (Doc. 16 at 4.) She also attempts the same with a recent decision of the Fifth Circuit, *Hernandez v. Mesa*, 885 F.3d 811 (5th Cir. 2018) (en banc), which involved a cross-border shooting by a border patrol agent. (Doc. 16 at 5.) But neither *Abbasi* nor *Hernandez* supports Biron's suggestion that "mine-run" prisoner cases are somehow exempt from *Abbasi*. To the contrary, the Fifth Circuit has made clear in another case filed by Biron herself that the analysis from *Abbasi* does apply in the context of prisoner civil-rights suits. *See Biron v. Upton*, 737 F. App'x 713, 716 (5th Cir. 2018) (remanding Biron's First and Fifth Amendment claims against prison officials that had been dismissed in screening, with an explanation that it would be necessary to analyze whether *Bivens* should be extended to claims arising in a new context, and citing *Butts v. Martin*, 877 F.3d 571, 587 (5th Cir. 2017), which in turn cited *Abbasi*); *see also Brunson v. Nichols*, 875 F.3d 275, 279 (5th Cir. 2017) (inviting the district court to conduct an *Abbasi* analysis in a case involving a federal prisoner's claim

that he was placed in "lockup" for three weeks in retaliation for a grievance).

Applying *Abbasi*, Biron fails to show that a new *Bivens* remedy should be recognized in the context of her case. Biron acknowledges what she characterizes as a "trend" of declining to extend *Bivens* when there exist alternative remedies of the type available to her (such as the administrative-remedy process and the possibility of non-*Bivens* suits in court). (Doc. 16 at 8.) While Biron claims that "this analysis is deeply flawed," (Doc. 16 at 8), her personal disagreement with the caselaw in this area is not sufficient to support expansion of the *Bivens* remedy. Instead, because of the multiple considerations discussed in the defendants' motion that counsel against expansion of *Bivens* here, all such claims asserted by Biron should be dismissed.

2.   The Court should also decline to recognize a personal-capacity damages remedy against federal officials under the Religious Freedom Restoration Act (RFRA). As noted in the defendants' filings and also in Biron's briefing, there is conflicting caselaw from outside the Fifth Circuit on this issue.[2] (*See* Doc. 11 at 14 n.8; Doc. 16 at 11–12; Doc. 17 at 13–14 n.9.) Biron appears not to dispute, though, that the Fifth Circuit has never recognized a personal-capacity claim for money damages against federal officials under RFRA. And when such a claim was attempted in a case in the Southern District of Texas, the district court dismissed it (in a ruling that apparently was not appealed) and explained that RFRA did not "contemplate recovery from individuals." *Bloch v. Samuels*, No. H-04-4861, 2006 WL 2239016, at *7 (S.D. Tex. Aug. 3, 2006).

---

[2] The Solicitor General recently filed a certiorari petition in a case in which the Second Circuit found RFRA to authorize a personal-capacity damages remedy. *See Tanzin v. Tanvir*, No. 19-71 (cert. petition filed July 12, 2019).

Biron identifies no good reason to create a conflict among district courts in the Fifth Circuit regarding the availability of a private damages remedy under RFRA, especially in light of the considerations that weigh against such a remedy discussed in the defendants' motion. (*See* Doc. 17 at 12–15.)

3. Finally, even if a personal-capacity damages remedy were assumed under *Bivens*, RFRA, or any source of law, the defendants are still entitled to a dismissal on the basis of qualified immunity and because Biron fails to state any claim for relief (including because of bars imposed by the Prison Litigation Reform Act and *Heck v. Humphrey*, 512 U.S. 477 (1994)).

On the issue of qualified immunity, Biron fails to meet her burden to identify some clearly established law—in the form of a precedent from the Fifth Circuit or Supreme Court—showing that the defendants' alleged actions violated some right of hers. As the defendants' motion noted, the focus of this analysis must be on "the specific context of the case, not . . . a broad general proposition." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). But Biron points to no caselaw showing the defendants' alleged actions to have been improper. She relies on *Turner v. Safley*, 482 U.S. 78 (1987), but that case addressed the unrelated issues of inmate-to-inmate correspondence and inmates' marriage rights. (Doc. 22 at 10–11.) She also argues that there is a "clearly established constitutional right to refuse medical treatment," (Doc. 22 at 11), but none of the cases cited for this proposition hold that confiscating a manuscript from an inmate is equivalent to "forced medication" within the meaning of such caselaw. Instead, the cases Biron relies on addressed physical, interventional medical treatment in the form of artificial

hydration and nutrition. *See Cruzan v. Director, Mo. Dep't of Health*, 497 U.S. 261, 265 (1990); *Thompson v. Upshur Cnty.*, 245 F.3d 447, 461 n.10 (5th Cir. 2001). Because Biron cites no precedent holding that actions akin to the defendants' amount to a violation of an inmate's rights, the defendants are entitled to qualified immunity. Biron also fails to state any claim for relief generally. Prison regulations will violate the Constitution only if not "reasonably related to legitimate penological interests," but such interests clearly existed given Biron's history as a sex offender and the circumstances of this case. *See Butts*, 877 F.3d at 584. Nor have facts showing any substantial burden or other interference with any of Biron's rights been pleaded. (*See* Doc. 17 at 19.)

The *Heck* bar also applies. In a single paragraph, Biron asserts with essentially no analysis that "application of the *Heck* doctrine [to her case] is a bridge too far." (Doc. 22 at 14.) But as discussed in the defendants' motion, if Biron were permitted to use this litigation to challenge her participation in sex-offender treatment, that would directly call into question the clause in her criminal judgment requiring such treatment upon release. (*See* Doc. 17 at 20.) Accordingly, the *Heck* bar applies.

The Prison Litigation Reform Act likewise operates as a bar to Biron's damages claims for all the reasons explained in the defendants' motion. (*See* Doc. 17 at 21–23.) As Biron concedes, she has not made any claim for nominal damages—despite having amended her complaint after the defendants raised the Prison Litigation Reform Act in their motion to dismiss the original complaint, (*see* Doc. 11 at 20), and notwithstanding that Biron is a (former) attorney who clearly knows the differences between various types of damages. Indeed, the new allegations in the amended complaint that the defendants

caused Biron to suffer an "upset stomach" were obviously an attempt to plead around the Prison Litigation Reform Act's physical-injury requirement. (*See* Doc. 17 at 22.) But the caselaw cited by the defendants makes clear that such claimed injuries are insufficient as a matter of law. (*See* Doc. 17 at 22–23.) Accordingly, a dismissal of all damages claims on the basis of the Prison Litigation Reform Act is warranted.

\* \* \* \* \* \* \* \*

As discussed in the defendants' motion and herein, there are multiple, independent reasons that Biron cannot proceed against the defendants on any personal-capacity claims. Biron fails to rebut these arguments, and all such claims should be dismissed.

**B.    Biron fails to establish jurisdiction for any official-capacity claims.**

The doctrine of derivative jurisdiction continues to bar Biron's attempt to bring official-capacity claims against the defendants relating to the confiscation of her manuscript.[3] These claims, while nominally asserted against the federal officials named as defendants, are considered to be claims against the government itself. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Smart v. Holder*, 368 F. App'x 591, 593 (5th Cir. 2010). And under the doctrine of derivative jurisdiction, if the "state court had no jurisdiction over the claim against the [government]" when the suit was initially filed, "the district court could acquire no subject matter jurisdiction over the [government] upon removal." *See Spencer v. New Orleans Levee Bd.*, 737 F.2d 435, 437 (5th Cir. 1984). Here, no jurisdiction existed over the government when the suit was originally

---

[3] Biron does not appear to dispute that jurisdiction is also absent for any claim for injunctive relief against receiving sex-offender treatment from officials at FMC Carswell (where Biron is no longer housed).

filed in state court; accordingly, no jurisdiction can exist now after removal.

Biron's arguments to the contrary are unavailing. Biron suggests that derivative jurisdiction is merely a "procedural defect" rather than "jurisdictional." (Doc. 22 at 1.) But the cases she cites do not support this claim. Derivative jurisdiction simply was not at issue in *In re Allstate Insurance Co.*, 8 F.3d 219 (5th Cir. 1993) (cited by Biron at Doc. 22 at 1). Instead, the question was whether the district court could *sua sponte* remand a case due to the defendant's failure to adequately allege the plaintiff's residence when removing the case on the basis of diversity of citizenship. *Allstate*, 8 F.3d at 220. The second case Biron cites, *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998) (cited by Biron at Doc. 22 at 2), is similarly inapplicable. That case was filed in "Federal District Court" in the first instance, such that derivative jurisdiction was never at issue. *Steel Co.*, 523 U.S. at 88.

Nor does Biron find any support in the cases she cites from the Seventh Circuit. (*See* Doc. 22 at 2–3.) Regardless of how the Seventh Circuit may think the doctrine of derivative jurisdiction is "best understood," *see Rodas v. Seidlin*, 656 F.3d 610, 619 (7th Cir. 2011), it is Fifth Circuit law that is binding here, and the Fifth Circuit has made clear that the doctrine of derivative jurisdiction is still alive and well. *See Lopez v. Sentrillon Corp.*, 749 F.3d 347, 350–51 (5th Cir. 2014). In any event, even on their own terms the Seventh Circuit cases Biron cites do not establish that Biron's official-capacity claims can proceed here notwithstanding the lack of jurisdiction in state court. In *Rodas*, for example, the court relied on a rule that an alleged defect in jurisdiction at the time of removal cannot be raised for the first time on appeal if there was no other bar to

jurisdiction at the time judgment was entered and the case could have been filed in federal court originally. *See Rodas*, 656 F.3d at 624–25. But these principles do not apply here, where the jurisdictional issue has been raised prior to the entry of any judgment.[4]

Biron also suggests, citing *Azzopardi v. Ocean Drilling & Exploration Co.*, 742 F.2d 890 (5th Cir. 1984), and *Freeman v. Bee Machine Co.*, 319 U.S. 448 (1943), that her filing of an amended complaint after removal cured any jurisdictional bar arising from the doctrine of derivative jurisdiction. (*See* Doc. 22 at 5–6.) But Biron is mistaken. In *Azzopardi*, the Fifth Circuit stated that a claim filed in state court against a (non-government) defendant under the Death on the High Seas Act, 42 U.S.C. §§ 761 *et seq.* (DOHSA), could be reasserted in an amendment after the case was removed, notwithstanding a derivative-jurisdiction defense advanced by the defendant, which was arguing that a DOHSA claim is subject to exclusive federal jurisdiction and thus could not have been brought in state court in the first instance. *See Azzopardi*, 742 F.2d at 892–93. However, in *Azzopardi* there was at least one other claim asserted in state court against the defendant for which the state court had jurisdiction. *See id.* at 894 (explaining that the plaintiff "had a survival action . . . which could be brought in the Texas state court"). Thus, there was no question that the state court had jurisdiction over the defendant in some respect, which jurisdiction carried over into federal court.

---

[4] Biron also discusses *Camsoft Data Systems v. Southern Electronics Supply, Inc.*, 756 F.3d 327 (5th Cir. 2014), but in that case there is no mention of the doctrine of derivative jurisdiction—to the contrary, it was clear that jurisdiction had existed in the Louisiana state court from which the case was removed, as the case was between private parties and involved claims under the Louisiana Civil Code, *see id.* at 331.

The same was true in *Bee*. In that case, the plaintiff sued the defendant in state court on a simple breach of contract claim, and later added an antitrust claim under the Clayton Act after the case was removed due to diversity of citizenship. *Bee*, 319 U.S. at 449–50, 451. Because the case when originally filed in the state court consisted only of a claim under state law ("local law," in the Supreme Court's words), there was no question that the state court had jurisdiction over the defendant in some respect, which jurisdiction then carried over into federal court after removal. *See id.* at 451–52.

The situations in *Azzopardi* and *Bee* are thus distinguishable from the situation here, where the state court never had jurisdiction in any respect over the government as would be necessary for Biron to litigate official-capacity claims against the government in this Court after removal. Because no such jurisdiction existed, no jurisdiction can exist after removal. Indeed, in the *Pavlov* case noted in the defendants' motion, (*see* Doc. 17 at 25 (citing *Pavlov v. Parsons*, 574 F. Supp. 393 (S.D. Tex. 1983))), government officials were sued both for damages and for injunctive relief (i.e., in both a personal capacity and an official capacity), and the court properly held that jurisdiction could not exist for the injunctive-relief claims even when restated in an amended complaint after removal—notwithstanding that there was jurisdiction in state court (and federal court) for the damages claims. *See Pavlov*, 574 F. Supp. at 395–97, 399. This was the correct result because, as noted above, a suit against a government official for injunctive relief is really a suit against the government itself. So in reality there were two groups of defendants at issue in *Pavlov*: (1) the government officials in their personal capacities, over whom the state court did have jurisdiction in at least some respect, and thus who

were subject to jurisdiction in federal court after removal; and (2) the government itself (as the true defendant for the injunctive-relief claims originally filed in state court), over which the state court never had any jurisdiction, and over which jurisdiction therefore could not exist for these claims in federal court even after post-removal amendment of the complaint. The same is true here with respect to Biron's official-capacity claims.

For all these reasons, Biron's arguments against application of the doctrine of derivative jurisdiction are unavailing. Indeed, Biron's notion that filing an amended complaint after removal cures any defect in jurisdiction would effectively nullify the doctrine of derivative jurisdiction in cases involving federal defendants. Original jurisdiction will typically be available for such cases if filed in the first instance in federal court (assuming all other jurisdictional prerequisites are met). Yet Congress chose to preserve the doctrine of derivative jurisdiction in all cases removed under statutes other than 28 U.S.C. § 1441 (as this case was—it was removed under the federal officer removal statute, at 28 U.S.C. § 1442(a)(1)). *See Lopez*, 749 F.3d at 351. Thus, derivative jurisdiction still is a factor for the various removal statutes that are specifically applicable to federal defendants. *See, e.g.*, 28 U.S.C. §§ 1442(a), 1442a, 1444, 2679(d); 42 U.S.C. § 233(c). This decision by Congress to preserve the doctrine of derivative jurisdiction for cases removed under these statutes would be meaningless if plaintiffs like Biron could simply file amended complaints after removal to "create" jurisdiction where none previously existed.

## II. Conclusion

Biron's first amended complaint should be dismissed, in its entirety.

Respectfully submitted,

ERIN NEALY COX
United States Attorney

*/s/ Brian W. Stoltz*
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8626
Facsimile: 214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants

Certificate of Service

On July 22, 2019, I served the foregoing document on plaintiff Lisa Biron by mailing it to her by certified mail (#7018 2290 0001 4480 3751), addressed as follows:

Lisa Biron # 12775-049
FCI Waseca
P.O. Box 1731
Waseca, MN 56093

*/s/ Brian W. Stoltz*
Brian W. Stoltz
Assistant United States Attorney